# Lydia E. Harper *v.* Elizabeth B. O'Neil, Appellant.

*Married women—Promissory notes—Accommodation maker—Suretyship
—Act of June 8, 1893.*

In an action against a married woman upon a note made by her and indorsed by her husband, where the plaintiff proves that he loaned the money to the husband, the court should give binding instructions in favor of the defendant, as the case is within the inhibition of section 2 of the Act of June 8, 1893, P. L. 344. Neither the fact that the money was borrowed to pay for services rendered the wife nor the fact that she was the maker of the note gave rise to a presumption which shifted the burden of proof and required the submission of the case to the jury.

Argued Oct. 28, 1899. Appeal, No. 132, Oct. T., 1899, by defendant, from judgment of C. P. No. 1, Allegheny Co., June T., 1898, No. 667, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on a promissory note. Before STOWE, P. J.

At the trial the defendant alleged that she was an accommodation maker of the note in suit which had been signed by her and indorsed by her husband. Plaintiff proved that he loaned the money to the husband upon representations made by him that he needed the money to pay physicians' bills contracted during his wife's illness.

The court charged in part as follows:

[The question in the case is whether or not Mr. O'Neil, at the time he secured this loan, acted as the agent for his wife.] [2] If so his statements would be the same as though his wife had gone into the bank where Mr. Harper was and said to him just exactly what Mr. O'Neil said. Having possession of this note and this collateral security, and being authorized by her (if he was) to secure this loan, she became responsible for what he may have said as an inducement to the loan at the time the negotiations took place between him and Mr. Harper, just as Mrs. Harper would be responsible for Mr. Harper's remarks or the statements he made so far as the rights of his mother were concerned and be authorized by the power of attorney to nego-

tiate and transact business such as he was transacting at that time.

[As we understand the law, whenever a married woman puts into the hands of her husband a negotiable instrument for the purpose of money being raised upon it, and the husband, in pursuance of that authority, without reference to what may have induced the wife to sign the paper, goes to a bank or to some private individual to borrow money upon that, and the money is paid before maturity of the note upon that security, she is bound to pay the amount of that note unless the evidence shows that at the time the negotiations were consummated the party lending the money knew that it was an accommodation on the part of the wife and not a bona fide transaction for her benefit, as is indicated on the face of the paper.] . . . .

But in all these cases, as I understand the law to be now with reference to married women, the prima facie presumption is that a negotiable instrument of this kind is exactly what it seems to be; it is an indebtedness incurred by the wife; her name is to the paper, and prima facie it is her debt. With a prima facie liability appearing on the paper itself, if a party, in good faith and without knowledge of the fact that it was a mere accommodation note, gives his money upon it, he is entitled to recover against the wife. . . .

The whole question turns upon whether or not you are satisfied from the evidence, the burden of proof being upon the plaintiff, that Mr. Harper, at the time he negotiated this loan and gave the money upon it, had knowledge of the fact, or had reason to understand, that this money was not for the benefit of the wife, as upon the face of the paper it would purport to be. . . .

Mr. Woodward, counsel for plaintiff: Your honor said the burden of proof was upon the plaintiff as to the knowledge of Mr. Harper.

The Court: [The burden of proof, I meant to say, is upon the defendant, the one setting up that defense. The paper itself, as has been suggested, raises the presumption that the defendant is liable, and to overcome that the burden of proof is upon the defendant to satisfy you of facts which would prevent a recovery.] [4]

Verdict and judgment for plaintiff for $1,616.25. Defendant appealed.

*Errors assigned* were (1) in refusing to give binding instructions for plaintiff; (2–4) portions of the charge as above, quoting it.

*L. K. Porter*, with him *S. G. Porter* and *D. L. Starr*, for appellant, cited Real Est. Co. v. Roop, 132 Pa. 503; Patrick & Co. v. Smith, 165 Pa. 528.

*M. A. Woodward*, for appellee.

OPINION BY MR. JUSTICE FELL, December 30, 1899:

The transaction between the parties comes so clearly within the inhibition of section 2 of the Act of June 8, 1893, P. L. 344, which prohibits a married woman from becoming " accommodation indorser, maker, guarantor or surety for another," that the defendant's request to the court to charge that under all the evidence the plaintiff was not entitled to recover should have been granted. The plaintiff's agent testified: " Mr. O'Neil called on me and asked me to loan him some money, $1,500, representing to me that his wife had been sick in the hospital. He required the money to pay the physicians' bills. . . . We had a long conversation and finally I was persuaded out of sympathy for Mrs. O'Neil. . . . I asked him for her security. I drew the note. . . . It was not paid at maturity, although he promised to pay it before maturity, and I indulged him for a long time before I asked him for a second note." There is no testimony which modifies this statement or alters its legal effect, and the only possible inference from it is that the loan was made to the husband and that his wife became his surety.

Neither the fact that the money was borrowed to pay for services rendered the wife nor the fact that she was the maker of the note gave rise to a presumption which shifted the burden of proof and required the submission of the case to the jury. The husband was primarily liable for the physicians' bills, and no question of his agency for his wife in securing the loan was suggested by the testimony. The loan was made to him for

his use. The form of the note might have led one without knowledge of the transaction to regard the wife as the principal debtor and have required proof from her that she was an accommodation maker; but the party who made the loan was not without knowledge. He intended to loan to the husband, with the wife as surety, and that is what he did. As this appeared in the plaintiff's case in chief, the only question was one of law and there was nothing to submit to the jury.

The judgment is reversed.