CASE 12.—ACTION BY SALLY HEMBREE, ADMINISTRATRIX
        OF J. J. HEMBREE AGAINST J. W. MYRICK AND
        OTHERS.—December 7, 1909.

## Myrick, &c. v. Hembree's Admr.

Appeal from Knox Circuit Court.

H. C. FAULKNER, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.  Boundaries—Control of Monuments—Courses and Distances,
    —Both courses and distances of a boundary line must yield
    to well-known and fully identified objects called for in a line.
2.  Boundaries—Location—Evidence.—Evidence held to show
    that trees still standing were located as a corner by commissioners when dividing land upon its partition, and not
    certain trees which have disappeared.
3.  Estoppel—Estoppel by Record—Claim of Dower to Claim.—
    Though a widow had never conveyed her dower by a deed in
    the statutory manner, she was estopped to make any claim
    thereto after having disclaimed any right there to by proper
    pleading in a case.

JAS. M. HAYS, for appellant.

J. D. BLACK, W. R. BLACK, B. B. GOLDEN and P. D. BLACK
for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought by appellee, as administratrix of the estate of her deceased husband, J. J. Hembree, to recover of the appellant J. W. Myrick the sum of $700, with interest from November 2, 1905, subject to a credit of $200 paid December 2, 1905, and to enforce a vendor's lien for the payment thereof upon a tract of land lying on Brush creek, in Knox county, which was particularly described in the petition; the note having been executed for a balance

of purchase money which the appellant J. W. My-
rick was to pay for the land. The land was conveyed
by deed of November 2, 1905, from J. J. Hembree to
the appellant. J. W. Myrick and S. Y. Myrick, his
wife, jointly, but appellee Sally Hambree was not a
party to the deed, and consequently did not join in
the conveyance. After the execution of the deed, S.
Y. Myrick died in Knox county, intestate, leaving
several children, all infants. The children were
made defendants to the action, and were represented
in the court below by a guardian ad litem. The appel-
lant J. W. Myrick by answer alleged that, at the time
of the sale and conveyance of the land to himself
and wife by J. J. Hembree, Ewell Hembree and G.
M. Jenkins were each in the possession of and claim-
ing to own a small parcel thereof, which they refused
to surrender to him and are yet holding adversely
to him and claiming to own; that the part in the pos-
session of Jenkins was worth $350, and that in the
possession of Ewell Hembree $300; and that the loss
to him of these two parcels of land constituted a
breach of the warranty contained in the deed to him
from J. J. Hembree, which fact, in view of the insol-
vency of the latter's estate, which was duly alleged,
entitled him to a credit upon or set-off against the
note sued on for the value of the parcels held by
Hembree and Jenkins, respectively; and to that end
the answer was made a set-off and counterclaim.

It was further averred in the answer that appellee,
as the widow of her deceased husband, J. J. Hembree,
had never relinquished her dower in the land con-
veyed appellants by the latter, but yet owned and was
entitled to dower therein, which also constituted a
breach of the warranty contained in the deed from
her husband, and entitled appellant to set off the

value of such dower against the note for balance of purchase money and to judgment over against appellee for whatever sum its value, together with the credits he should be allowed for the loss of the Jenkins and Ewell Hembree parcels of land, might exceed in amount the note sued on. Appellee by reply controverted the affirmative matter of the answer, set-off, and counterclaim, and expressly waived and relinquished any right of or claim to dower in the land.

After thus completing the issues, considerable proof was taken by the parties in the form of depositions, and, on the hearing, the circuit court held that the parcel of land appellant alleged to be in the possession of Jenkins was not included in the boundary of the land conveyed appellant and his wife by the deed from the decedent, J. J. Hembree, but that the parcel in the possession of Ewell Hembree was so included and fixed its value at $10. The court, therefore, entered judgment in appellee's favor for the amount of the note for purchase money and interest to be credited by $200 as of December 2, 1905, and the $10 allowed as the value of the parcel of land in the possession of Ewell Hembree; also, for the enforcement of the vendor's lien asserted by appellee and a sale of the land conveyed appellant and his wife by the deed from J. J. Hembree, in satisfaction of the lien debt and costs of the action. The appellant J. W. Myrick and his children, by their guardian ad litem, complain that the judgment does them injustice; hence this appeal.

In order that our review of the rulings and judgment of the circuit court may be fully understood, we here present the following map of the lands in controversy:

Myrick, &c. v. Hembree's Admr.

The land conveyed by appellee's intestate, J. J. Hembree, to the appellant J. W. Myrick and his wife, is indicated on the map by the black lines which inclose in two places the name of "J. J. Hembree." A county road runs across the land, and is shown on the map. The road has been changed somewhat from its original location, but, as the site of the old road also appears on the map, the nature and extent of the change is readily discoverable. This land and the adjoining tract containing the name "G. M. Jenkins" were parts of the realty owned by Ezekiel Hembree at the time of his death and later divided among his heirs at law. Appellee's intestate, J. J. Hembree, was a son of Ezekiel Hembree, and the allotment to him in that division is the same land he sold and conveyed appellant J. W. Myrick and wife. But the deed to J. W. Myrick and wife from J. J. Hembree excepted or excluded therefrom a lot previouly conveyed by the grantor to S. E. Myrick, indicated on the map by the lines inclosing the words "Myrick Lot," and also a lot indicated on the map by the words "Ewell Hembree Lot." These exclusions, however, are not involved in this case.

As both the J. J. Hembree land and the G. M. Jenkins land were part of and involved in the division of the Ezekiel Hembree land, it is important to a proper settlement of the case to ascertain the precise location of the line common to the two tracts as established by the commissioners making the division of the Eekizel Hembree land, for it goes without saying that the true location of that line as fixed by the commissioners will determine the question whether cr not G. M. Jenkins has taken possession of any of the J. J. Hambree land conveyed by the latter to appellant J. W. Myrick and wife. It is insisted for ap-

pellants that their deed embraces a small part of the land indicated on the map by the black lines inclosing the name "G. M. Jenkins;" also, that a small part shown on the map in the shape of the letter "V," or of a wedge, is included in their deed, though in the possession of Ewell Hembree, these being the two parcels of land of which, it is alleged in the answer, appellants have never been able to get possession, and that the parcel in the possession of Jenkins contains from three to five acres and a house, and that in the possession of Ewell Hembree a half acre and a house. We must now determine whether these contentions of appellants are well founded.

We find that the appellants' deed contains among others the following calls: "Thence west 26 poles to a beech at the county road; thence south 25 degrees west 8 poles to two white walnuts and a black walnut." Upon the true location of these two lines depends the fact of whether G. M. Jenkins has possession of any part of the land embraced by appellants' deed. In other words, if the lines on the map inclosing the name "J. J. Hembree" agree with the lines established by the commissioners in dividing the lands of Ezekiel Hembree, it would necessarily follow that Jenkins is not in possession of any part of appellants' land. It is conceded that the "beech" mentioned in the call, "thence west 26 poles to a beech," is still standing as indicated on the map by the figure "2" under it, and that it is marked as a corner tree, the marks corresponding in age with the date of the work of the commissioners in dividing the Ezekiel Hembree land. It will be observed that the line running from the beech is described in appellants' deed as in the direction south 25 degrees west

and in length 8 poles to "two white walnuts and a black walnut."

Although there are not two white walnuts and a black walnut at the end of 8 poles from the beech, it is contended by appellants that the line should end with the 8 poles. If they are sustained in this contention, it would follow that the succeeding calls, instead of running with the solid black line to a black oak and sassafras as at figure 12, thence to the letters C. O. as shown on the map, would run with the dotted black line, as indicated thereon, to 12, thence to 13, which would leave in Jenkins' possession of that part of appellant's land lying between the dotted and solid lines, amounting to from three to five acres. While there are no white or black walnut trees standing at a distance of 8 poles from the beech, there are two white walnuts and a black walnut standing in the line on the course called for in leaving the beech, but they are at a distance of 12 instead of 8 poles from the beech. They are, however, marked as corner trees, and the marks are of an age corresponding to the date of the division made by the commissioners of Ezekiel Hembree's land, and, if the two successive calls are run from where these two white walnuts and black walnut stand at a distance of 12 poles from the beech, the running instead of going with the parallel dotted line would follow the solid black line to the "black oak and sassafras" at figure 12; thence to "C. O." at figure 13, and, if so run, it would not leave any part of the land embraced by appellants' deed in Jenkins' possession.

It is appellee's contention that the true line is from the beech to the two white walnuts and black walnut 12 poles from the beech, and from these walnut trees to the black oak and sassafras; thence to the letters

"C. O.," and such was the judgment of the circuit court. If, therefore, appellee has shown by the weight of the evidence that the two white walnuts and black walnut standing at a distance of 12 poles from the beech were adopted and marked by the commissioners as the corner, the line from the beech must necessarily go to them, for both courses and distances must yield to well-known and fully identified objects called for in a line.

Appellants claim that at the time of the partition of the Ezekiel Hembree land there were two white walnuts and a black walnut standing 8 poles from the beech and in the line calling to run therefrom south 25 degrees west 8 poles, and that these trees constituted the corner and were so marked by the commissioners. They admit, however, that all the walnut trees at that point have been cut down, but proved by three witnesses that the stumps of two of them are yet there. Of these three witnesses, one, John N. Johnson, testified that he was present a part of the time while the commissioners were making the division of the Ezekiel Hembree land; that he then saw the two white and the black walnut trees at figure 11, as indicated in pencil on the map, 8 poles from the beech, and that by direction of the commissioners, or one of them, he marked the trees as a corner. Johnson acknowledged, however, that the corner claimed to have been marked by him may have been changed by the commissioners in his absence and before concluding their work. On cross-examination he admitted that he was not present when the commissioners ran and established the line from the walnut corner to the black oak and sassafras 70 poles therefrom, and also admitted that he was not present at the time Milton Hembree marked, by direction of the commis-

sioners after they had completed the 70-pole line, the two white walnuts and black walnut which they established as a corner. So it seems to appear from appellants' proof that none of their witnesses were able to tell where the commissioners finally established the two white walnut and black walnut corner.

It further appears that one of the commissioners, Amis, is dead, but the other two, J. C. Sprouls and John Grindstaff, are still living, and both were introduced as witnesses in appellee's behalf. Manifestly no one ought to know better than do these two commissioners where they located the walnut corner, and they in positive terms testify that in making the division of the Ezekiel Hembree land they ran and established the line from the beech at the county road to the two white walnuts and black walnut where the corner was made, and the line thus run being represented on the map from the beech to "two wh. walnuts and Bl. walnut." They were equally positive that they also ran and established a line running from the walnut corner a distance of 70 poles to the "black oak and sassafras," and that, after running back from the black oak and sassafras to the white walnuts and black walnut, they marked the two white walnuts and black walnut, and also the black oak and sassafras as corners, and that the walnuts thus marked stood at a distance of 12 poles, instead of 8 poles, from the beech in the old road. To refresh their recollection these two witnesses examined the lines as thus established by them a short time before giving their depositions, and they then identified the two white walnuts and black walnut, as well as the black oak and sassafras, as the corners established by them in the division. They further testified that the two white walnuts and black walnut were still

standing and bore the marks of corner trees they had given them, and that the marks correspond in age with the date of the division. Sprouls and Grindstaff were corroborated fully on these several points by Milton Hembree, who did the marking of the corners by their direction.

It is apparent, therefore, from their testimony, and that of Milton Hembree, that the walnut trees were marked as corners when appellants' witness, Johnson, was not present, and, though they may have marked walnut trees at the distance of 8 poles from the beech, it is patent from the great weight of the testimony that, if they did so, the trees thus marked were abandoned as corners, and that the corner was eventually established at a distance of 12 poles from the beech. If the corner was established by marking the two white walnuts and black walnut 12 poles from the beech, it is clear that none of the land in the possession of Jenkins is within the boundary of appellants' deed. Therefore, the circuit court properly decided that appellants had lost no land by the claim or possession of Jenkins.

We find, however, that the half acre of ground alleged by appellants to be in the possession of Ewell Hembree is covered by appellants' deed, and that Ewell Hembree was in possession of the half acre when appellants received their deed. Therefore, the circuit court did not err in holding that the half acre of ground was a loss to appellants. But we are satisfied that $10, the sum at which the circuit court valued the half acre of ground, will fully indemnify appellants for their loss, and that the court did right in allowing them a credit upon the note sued on for only that amount.

It is manifest that appellee now has no claim to dower in the land conveyed by appellants. While she has never conveyed it by deed in the statutory manner, having by a proper pleading in this case disclaimed any right to dower, she will be estopped to make any claim to same in the future.

Being of opinion that the judgment is in all respects correct, the same is hereby affirmed.