## Lockart v. Kentland Coal & Coke Company.

(Decided December 20, 1918.)

### Appeal from Pike Circuit Court.

1. Cancellation of Instruments—Exhibits— Pleading— Demurrer.—In an action brought in equity to obtain the cancellation of certain deeds, certified copies of which, properly identified, were filed with and made a part of the petition, and the recitals of which contradicted the allegations of the petition and could be given no other legal effect than such as would destroy the plaintiff's right to the relief sought, the action of the circuit court in sustaining a general demurrer to the petition was not error.

2. Peading—Exhibits.—An exhibit can never supply the omission of an allegation essential to the statement of a cause of action. It may, however, aid a defective allegation, or even control or destroy a positive one in contradiction of it. For if an exhibit referred to and filed contradicts an allegation of the pleading, the exhibit will control the allegation, unless the exhibit be expressly impeached or explained by the facts stated in the petition.

3. Husband and Wife—Cancellation of Instruments—Estoppel.— Where a woman at the time sui juris, by executory contracts in writing made before marriage, sold her interest in the mineral rights in and under two tracts of land, and after marriage, in performance of the covenants of the executory contracts, was joined by her husband, then an infant, in the execution of deeds conveying the same mineral rights to the assignees of the vendees in the executory contracts; in an action subsequently brought in equity by the wife for the cancellation of the deeds and recovery of the mineral rights on the ground that both deeds were rendered void by the infancy of her husband, it was properly adjudged by the circuit court that she was estopped by the executory sales of the mineral rights, made before marriage, to claim the relief prayed.

4. Husband and Wife—Estoppel.—The doctrine of estoppel is founded on the broad and just rule that one shall not defeat his or her voluntary act, or even deny its validity, to the prejudice of another. A married woman may be estopped the same as a single woman or a man, where permission of the assertion of her claim would operate as a fraud.

5. Estoppel—Pleading in Avoidance.—While it is the general rule that an estoppel must be pleaded, this rule does not obtain where all the facts out of which the estoppel grows already appear in a pleading of the party against whom or in whose favor the estoppel is urged.

E. J. PICKELSIMER and ROSCOE VANOVER for appellant.

AUXIER, HARMAN & FRANCIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Affirming.

This action was brought by the appellant, Elizabeth Lockhart, to obtain the cancellation of four deeds, in so far as they purport to convey her undivided one-sixth interest in all the mineral rights and minerals in and under two tracts of land lying on Smith Fork of Peters creek, in Pike county, jointly owned by appellant and her brothers and sisters, but now in the possession of the appellee, Kentland Coal & Coke Company, a corporation created under the laws of West Virginia. The two tracts of land are properly described in the petition, and the mineral rights in the two were conveyed separately by two of the deeds attacked to the Northern Coal & Coke Company, also a West Virginia corporation. These two deeds were executed Nov. 22, 1902, by appellant and the other joint owners of the lands; appellant's husband, Elijah Lockhart, uniting therein. The third deed attacked conveyed the mineral rights in the two tracts of land to the Mason Coal & Coke Company, another West Virginia corporation, and was executed by the Northern Coal & Coke Company April 25, 1907. By the fourth deed attacked the Mason Coal & Coke Company, on June 29, 1910, conveyed the same mineral rights to the appellee, Kentland Coal & Coke Company.

The particular relief asked in the prayer of the petition is that the several deeds referred to be canceled in so far as they purport to convey appellant's interest in the mineral rights in and under the two tracts of land described therein; and further, that her undivided one-sixth interest in such mineral rights be adjudged her property and she be given the possession thereof.

The grounds alleged in the petition for the relief sought are that as the appellant's husband, Elijah Lockhart, was an infant, only eighteen years of age, when he united with her and the other joint owners of the Peters creek lands in the two deeds of Nov. 22, 1902, conveying the mineral rights therein to the Northern Coal & Coke Company, he was incompetent to contract or to unite in the conveyances, which, as to appellant's interest, rendered void those deeds and the deed subsequently made by the Northern Coal & Coke Company to the Mason Coal & Coke Company and the deed from that company to the appellee, Kentland Coal & Coke Company.

Appellee filed a general demurrer to the petition, which the circuit court sustained, and appellant declining to plead further, the petition was dismissed. From the judgment entered in conformity to these rulings the latter has appealed.

Although the judgment appealed from does not indicate the reasons inducing the ruling of the circuit court on the demurrer to the petition, our reading of that pleading and accompanying exhibits has readily enabled us to comprehend them. Obviously, that court's conclusion that the petition failed to show appellant entitled to the relief sought, was based on the contradiction of its material allegations by the deeds of November 22, 1902, marked 1 and 2, respectively, filed with and made a part of the pleading, both of which show that more than a year before the execution of the deeds, and while she was an unmarried woman, appellant entered into certain written executory contracts with two of appellee's vendors whereby, for a consideration then agreed upon, she sold and obligated herself to convey to them all her interest in the mineral rights and minerals upon and under the two tracts of land in question. It appears from the recitals in deed No. 1 that the first of these contracts, was as to the sale of the mineral rights in the larger of the two tracts of land and was made November 11, 1901, by appellant and her brothers and sisters, the other joint owners of the land, with a corporation known as the Ohio and Big Sandy Land Association, and that the title bond evidencing the contract was assigned by the latter to the Northern Coal & Coke Company, the grantee in deed No. 1. The second executory contract, as appears from the recitals of deed No. 2, was as to appellant's interest in the mineral rights in the smaller of the two tracts of land, and was entered into Nov. 27, 1901, by appellant alone with the Empire Coal & Coke Company, which had previously acquired the interests of her brothers and sisters in the mineral rights of the smaller tract. The title bond evidencing the contract between appellant and the Empire Coal & Coke Company, like that executed to it by her brothers and sisters, was duly assigned to the Northern Coal & Coke Company. It will thus be seen that by the assignments referred to the Northern Coal & Coke Company became the beneficiary of each of the executory contracts to which appellant was a party; hence the recitals in the two deeds of November 11, 1901, from

appellant and her brother and sisters to that company that they conveyed the interests of the grantors to the mineral rights in the two tracts of land in compliance with the covenants of the title bonds; and we have previously stated how the title to the mineral rights in question was finally conveyed to appellee by successive deeds from the later owners.

In determining whether the demurrer to the petition should have been sustained the recitals in the two deeds referred to must be considered. They are two of the conveyances denounced and sought to be set aside. An exhibit can never supply the omission of an allegation essential to the statement of a cause of action. It may, however, aid a defective allegation, or even control or destroy a positive one in contradiction of it. For if an exhibit referred to and filed contradicts an allegation of the pleading, the exhibit will control the allegation, unless the exhibit be expressly impeached or explained by the facts stated in the pleading. Civil Code, sections 120-128; Newman's Pleading & Practice, sections 204a-204c; Gardner v. Cont. Ins. Co., 25 R. 426; Hudson v. Scottish Union Ins. Co., 110 Ky. 722.

In view of the contradiction of the allegations of the petition by the recitals found in the two deeds filed with it as exhibits, it must be accepted as true that appellant, prior to her marriage and prior to the execution of the deeds, had entered into executory contracts for the sale of her interest in the mineral rights in the lands described in the petition and deeds; and this being true she will not be permitted to recover such interest as here attempted. The precise question here presented has never been passed on in this jurisdiction, but in our opinion it is not difficult of solution. Since the enactment in 1894 of what is known as the "Weissinger Act," a married woman of this state has been free to contract, acquire, hold, dispose of property, and sue and be sued in all respects as a single woman, except that she cannot become surety for another, even her husband, or "make any executory contract to sell or convey or mortgage her real estate unless her husband join in such contract." Kentucky Statutes, sections 2127-2128. While as declared by section 2127, *supra,* a married woman cannot make an executory contract to sell, convey, or mortgage her real estate without her husband's joining in the contract; and cannot, as further declared by Kentucky Statutes, sec-

tion 506, convey her real estate unless the husband unite with her in a joint deed for that purpose, or shall have first made a deed, followed by a separate one from her, there is nothing in any of the sections referred to that declares the wife shall not, by deed, in which the husband does not join, convey her real estate sold by executory contract before her marriage. The restriction imposed by section 2127 upon the right of the wife to make an executory contract for the sale or conveyance of her real estate, unless her husband join in such contract, manifestly does not refer to an executory contract made by her before marriage, but only to such a contract made after or during marriage. It is clear that neither the refusal of the husband to join the wife in a deed made to carry out a valid executory contract for the sale of her real estate entered into by her before their marriage, nor her reliance upon the disability of coverture, would abrogate the contract or prevent a court of equity from decreeing its specific performance at the suit of the vendee; and if the refusal of the husband to join in the deed would not relieve the wife of the performance of the executory contract, how could his infancy at the time of uniting with the wife in the execution of such a deed do so?

Appellant's husband is not joining in the attack upon the deeds of which she complains, either on the ground that he was an infant when they were executed, or otherwise. Indeed, he is not a party to the action. In fact, he would take no present or future interest in the mineral rights the deeds convey, if they were cancelled, for the sale of those rights by the executory contract made by appellant prior to their marriage would, under the laws of this state, deprive him of even the potential right to take at the death of appellant, if he should then be living, any interest in them. Under the present statutes of this state respecting the property rights of husband and wife, the surviving husband takes at her death only such interest in her real estate as would go to her in his real estate, if she survives him, viz.: a life estate in one-third in value of the whole. In the following cases it was held that the wife is not entitled to dower in the lands of which the husband was not beneficially seized during the coverture; and that she cannot have dower in land which the husband had, before the marriage, sold by executory contract, although he did not convey the legal title to the

purchaser until after he married. Fontaine v. Dunlap, 82 Ky. 321; Gully v. Ray, 18 B. Mon. 107; Oldham v. Sale, etc., 1 B. Mon. 76; Gaines v. Gaines, 9 B. Mon. 295. Manifestly the doctrine applied to the wife by the cases, *supra,* is equally applicable to the husband. We are constrained to accept appellant's contention that the two deeds in which appellant's husband joined with her to convey her interest in the mineral rights in the Pike county lands to the Northern Coal & Coke Company, because of his then infancy, were and are void as to her, for it seems to have been so held as to a similar deed in Phillips v. Hoskins, etc., 128 Ky. 371, and Mueller v. Ragsdale, etc., 158 Ky. 412. While it appears from the opinion in the first of these cases that there was a disaffirmance of the deed by the husband after attaining his majority by his act in joining with his wife in a mortgage of the land conveyed by the deed, and the conclusion that the deed was void was in part rested upon this disaffirmance, a careful reading of the opinion as a whole will demonstrate that while it says the deed was only voidable as to the husband, it also seems to have declared it by reason of the husband's infancy alone void as to the wife.

Mueller v. Ragsdale, etc., *supra,* was an action for the specific performance of a contract of sale of the land the title to which was involved in Phillips v. Hoskins, etc., the sale being one made by the wife after her second marriage. The opinion merely follows that in Phillips v. Hoskins, etc., and adheres to all the conclusions therein expressed. But conceding that the infancy of appellant's husband rendered void, as to her, the two deeds in which he united with her and the other joint owners to convey the mineral rights in the Pike county lands to the grantee named therein, we are nevertheless compelled to hold that appellant is estopped by the executory sales she made of her interest in the mineral rights before her marriage, to maintain this action for the cancellation of the deeds in question or those subsequently executed whereby the title to the property conveyed was vested in the appellee; and, as by reason of the several deeds referred to and its present ownership of the property, the latter became a privy to the original or executory contracts, it is as much entitled as would be its remote vendors, the first beneficiaries of those contracts, to rely upon any ground of estoppel that may arise out of its performance or non-performance.

It is sufficient to say of the doctrine of estoppel that it is founded on the broad and just rule that one shall not defeat his or her voluntary act, or even deny its validity, to the prejudice of another. A married woman may be estopped the same as a single woman or a man, where permission of the assertion of her claim would operate as a fraud. Overcost v. Lawrence, 141 Ky. 25; Myrick v. Hambrees' Admr., 136 Ky. 110; Ayer & Lord Tie Co. v. Baker, 138 Ky. 494; Herman on Estoppel, 2 vol., section 1103. Whatever may be the rule concerning the formalities needed to bind married women, there is no doubt they may be estopped by their deliberate conduct, as well as anyone else. It seems to us that a stronger case for the application of the doctrine of estoppel than the one we here have cannot be found. In the absence of the deeds sought to be cancelled a court of equity could, notwithstanding her marriage and the infancy of her husband, have compelled appellant and her husband, at the suit of the vendees, to perform by the execution of a proper deed through its commissioner, the previously made executory contracts for the sale of her interest in the mineral rights which the deeds, sought to be cancelled, attempted to convey. Therefore, the mere cancellation of the deeds on account of the infancy of appellant's husband at the time of their execution, would not relieve of the obligation to convey her interest in the mineral rights imposed upon her by the executory contract made when she was admittedly *sui juris*. This situation estops appellant to demand the relief prayed in the petition and the estoppel was properly allowed to prevail.

It is insisted, however, for appellant that the defense of estoppel cannot be made by demurrer, but must be pleaded; and that as this was not done by answer, the circuit court erred in sustaining the demurrer to the petition. This contention cannot be sustained. It is the general rule that an estoppel must be pleaded, but this rule does not obtain where all the facts out of which the estoppel arises already appear in a pleading of the party against whom or in whose favor the estoppel is urged. In such case the question of estoppel may be raised by demurrer. Civil Code, section 93. In Herman on Estoppel, 2 vol., section 1276, it is said: "When the estoppel already appears from the pleadings on either side. it need not be set out again formally of record, and the

proper course is to demur without going further." In 8 Enc. Pleading & Practice, 9, we find the rule thus stated: "Where facts sufficient to constitute an estoppel appear in the previous pleadings, the estoppel need not be especially pleaded, but may be taken advantage of by demurrer." Hanson v. Buckner, 4 Dana, 251.

As all the facts constituting the estoppel relied on by the appellee in this case were presented by the petition and exhibits, and the recitals of the exhibits particularly showing the executory contracts made by appellant before her marriage, must, to the extent they contradict the allegations of the petition control, the entire question of estoppel was properly raised by demurrer and correctly determined by the judgment sustaining the demurrer and dismissing the petition.

Wherefore the judgment is affirmed; the whole court sitting.