## Montgomery Coal Corporation v. Riddle, et al.

(Decided October 30, 1925.)

## Appeal from Perry Circuit Court.

1. Estoppel—Evidence Held to Show "Estoppel in Pais" on Company from Exercising Surface Rights.—Evidence that owners of surface platted lands had advertised it for sale, of which defendant company had knowledge, and made no objection, but informed prospective buyers that they had no intention of using surface, showed "estoppel in pais;" that is, such conduct by one sought to be estopped precluding him from relying on defense, though true, against one who has changed his position for worse in reliance on such conduct.

2. Corporations—Estoppel in Pais Applies to a Corporation, where Corporate Officers Act within Scope of Authority.—An estoppel in pais applies with same force to a corporation as to an individual, where corporate officers or agents act within scope of authority, and apparently have authority to take action relied on for estoppel.

FAULKNER, STANFILL & FAULKNER and MORGAN, EVERSOLE & BOWLING for appellant.

WOOTTON, SMITH & WOOTON for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

In October, 1914, Stacey and others conveyed to the Carrs Fork Coal Land Company the minerals on and under a tract of about 350 acres of land on Carrs fork in Perry county, and in the conveyance gave the vendee certain mining and manufacturing rights on the surface. In 1916 the Carrs Fork Coal Land Company conveyed the said minerals and all of its rights and privileges to the Montgomery Coal Corporation, a Virginia corporation, and in 1918 the Montgomery Coal Corporation leased to the Montgomery Creek Coal Company, a Kentucky corporation, for thirty years, for mining purposes, a part of the tract so conveyed by Stacey and others and a larger boundary acquired by the Montgomery Coal Corporation from other parties, the leased property embracing mining privileges in approximately 600 acres of land.

These consolidated actions involve the right of the lessee, Montgomery Creek Coal Company, to use the

surface of that part of the lands conveyed by Stacey and others to the Carrs Fork Coal Land Company, which is embraced in the lease by the Montgomery Coal Corporation to the Montgomery Creek Coal Company, for the erection thereon of miners' houses.

Both parties claim their rights in the use of the surface under the Stacey deed of 1914, and the record and briefs are largely made up of arguments on the correct interpretation of various provisions and reservations therein; but as we have concluded that the plea of estoppel as against the Montgomery Creek Coal Company was properly sustained by the chancellor below, we have deemed it unnecessary for the purposes of these appeals to consider any other question.

The judgment of the chancellor only granted relief against the Montgomery Creek Coal Company, the operating company, and its codefendants Eversole and Luttrell, who were enjoined from building houses on the small tract of land, the surface of which was owned by Boggs' trustee and others, and does not purport to pass upon the rights of the holding corporation, the Montgomery Coal Corporation, under the provisions of and the reservations in the deed from Stacey and others. The judgment against the parties named is based upon a finding from the evidence and a personal inspection of the property by the chancellor, that the use of the Boggs' tract is unnecessary to the operating company in its successful operation of the lease from the Montgomery Coal Corporation, and upon the further fact that the operating company and its codefendants, other than the holding company, had not only permitted the plaintiffs to purchase and own their several lots on the tract in controversy, known as the Boggs tract, but that the several purchasers of lots therein had bought the same and made improvements thereon with the knowledge and acquiescence of the operating company and its officials. The effect of this judgment is that during the existence of the thirty-year lease the operating company is enjoined from interfering with the rights of the several lot owners on the Boggs tract, but it does not pass upon the rights of the holding company to the use of the surface of the Boggs tract after its lease to the operating company shall have expired. That being true, there is no interpretation in the judgment of the chancellor, nor in this opinion, of the rights of the parties under the pro-

visions and reservations in the Stacey deed, but this opinion is placed wholly on the ground of estoppel against the operating company.

Some time after the execution of the Stacey deed to the Carrs Fork Coal Land Company, Boggs' trustee and others became the owners of the surface of the tract of land involved, claiming also under the Stacey title. The surface of the property was laid off by them into lots, together with certain streets or highways, and they extensively advertised in newspapers and by thousands of handbills a sale of lots to be had at a given date on that tract of land. At the time the Montgomery Creek Coal Corporation was in operation, and its officers and managing agents had knowledge of this proposed sale of lots. Not only did they offer no objection thereto, not only did they stand by and encourage by their acquiescence the purchasers at such sale to buy the lots and part with their money, but before that sale as many as six or eight persons contemplating the purchase of lots at the sale approached the managing agents of the Montgomery Creek Coal Company, and asked if they had any claim upon the surface of that property inconsistent with the purchase by them of lots therein, and the evidence is convincing that such managing agents and officers, without exception, stated that they had no purpose to use the surface of that land for miners' houses, and in effect told those contemplating buying lots at such public sale the company had no objection to their acquiring such lots, as it preferred that its employes and miners for the nearby coal operation should own and live in their own homes rather than in houses erected and owned by the company.

Estoppel *in pais*, sometimes called equitable estoppel, embraces in its various subdivisions estoppel by conduct, that is, such conduct by the one sought to be estopped as thereafter precludes him from asserting a cause of action or relying upon a defense, although such cause of action or defense may be based upon truth, against one who has changed his position for the worse in reliance upon such conduct.

In this action we have the purchasers of lots on the Boggs tract, after an extensive advertisement in both newspapers and by posters, which must have come to the knowledge of the operating company, and we have those same officials not only failing to object to such public

sale of lots, but openly encouraging various prospective bidders in parting with their money and in erecting improvements upon their said purchases. Such officials were not only officers of but the managing agents of the operating corporation; they were in active charge of the coal mining operation, and the sale of lots was upon the very surface of the property which they were operating. The fact that they knew of the sale is not only shown by the evidence of a number of witnesses, but it is acknowledged by them in their testimony that they had notice of such sales and discussed the sale with a number of prospective purchasers, among whom were a number of the parties to this action.

It is said, however, that a corporation is not estopped by the statements or unauthorized acts of its agents; but the rule is that an estoppel *in pais* applies with the same force to a corporation as to an individual where the corporate officer or agent is acting within the scope of his authority, and apparently has authority to make the statement or take the action relied upon as an estoppel.

As said in 10 Cyc. 1065:

> "The general rule is that corporations quite as much as individuals are held to a careful adherence to truth in their dealings with mankind, and cannot by representations or by silence involve others in onerous engagements and then defeat the just expectations which their conduct has superinduced. A round statement of this doctrine is, that estoppels *in pais* operate against corporations in like manner as against natural persons."

Likewise it is said in 10 R. C. L., page 724:

> "A corporation is estopped from denying that its agents possess all the authority which it gives them the appearance of having."

It would, therefore, be subversive of every equitable principle to now permit the corporation to assert rights in that tract of land, which would in effect nullify the practical value of the purchases made at that sale. It seems a proper case in which to apply the equitable doctrine of estoppel, and to deny to it the right to insist upon the exercise of a right which it led those purchasers to believe it either did not have or would never insist upon.

We are convinced that except for such conduct on the part of the operating company's managing agents, none of the purchasers at that sale would have parted with their money for the lots. Jett v. Jett, 171 Ky. 548; Lockhart v. Kentland Coal & Coke Co., 182 Ky. 673; George v. Ford, 183 Ky. 808; Pomeroy's Equity, vol. 2, section 804.

Judgment affirmed.