INDUSTRIAL TRUST COMPANY, a corporation of the State of Delaware, *v.* MARTA ROSA CANTERA.

(*March* 21, 1933.)

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Paul Leahy* for plaintiff.

*Joseph A. L. Errigo* for defendant.

Superior Court for New Castle County, No. 349, September Term, 1932.

PENNEWILL, C. J., delivering the opinion of the Court:

The plaintiff brought suit on a certain promissory note dated September 9, 1931, in the amount of one thousand dollars ($1,000.00). The makers of the note are Marta Rosa Cantera and her husband, Salvatore Cantera. The plaintiff filed its affidavit of demand to which the defendant filed her affidavit of defense. The defendant alleged three grounds of defense but has abandoned all except the following:

"That the amount involved in said note was loaned and advanced to Salvatore Cantera, the husband of said defendant, and that the said defendant acted merely as her husband's surety and as such is not liable for her husband's obligation."

The plaintiff made its motion for judgment notwithstanding the affidavit of defense and the defendant likewise made a motion that judgment be refused for the plaintiff notwithstanding its affidavit of demand. The single question before the Court is whether the defendant can maintain the defense that a married woman is incapable, under the Delaware law, from acting as her husband's surety or that she is under a disability that prevents her from being an accommodation maker or endorser on a promissory note.

The note in suit reads as follows:

"$1,000                                    Wilmington, Del., Sept. 9, 1931.
      "Thirty days after date we promise to Pay to the order of Salvatore Cantera at the Industrial Trust Company One Thousand 00/100 Dollars
      "Without defalcation for value received.
      "Credit the Drawer.
                                        "Marta Rosa Cantera
                                        "Salvatore Cantera."

From a mere reading of the note it appears that the defendant was the first signer and her husband signed after her; but, regardless of that fact, it is an instrument of writing under the statute, *Revised Code*, § 2628, which provides that

"An obligation, or written contract, of several persons, shall be joint and several, unless otherwise expressed."

It is not denied that the plaintiff has the right to proceed against this particular defendant alone and is not forced to join the other maker of the note as a party defendant.

It is the contention of the plaintiff, in support of the affidavit of demand heretofore filed:

"  *    *    *    That although the general disability of coverture existing under the common law precluded the right of a wife to become surety for her husband, the prevailing weight of authority in construing married women statutes enlarging a married woman's contractual powers without express limitation of her capacity to become

a surety, are to the effect that a married woman may assume by express contract a general liability as surety for her husband."

In 30 *C. J.* 740, it is said:

"Whether or not a married woman is able to become surety under modern statutes depends wholly upon the existing statutory provisions peculiar to the particular jurisdiction under the law of which the question is to be answered. Under statutes enlarging her general contractual power, but specifically providing that a married woman cannot bind herself as surety or guarantor, it is obvious that a married woman cannot become security for another's debt. But in jurisdictions where the statutes give her general contractual power without express limitation of her capacity to become surety, it has been held that by necessary implication a married woman may become a surety. Under such statutes she may bind her property to pay the debts of another, including those of the husband except where by statute the rule may be otherwise."

In 13 *R. C. L.*, § 336, it is said:

"Under statutes authorizing her to contract in like manner as if she were unmarried, a married woman may enter into a contract of guaranty or suretyship, and this has been held to include power to become a surety for or to guarantee the indebtedness of her husband."

Some states have particular statutes which prohibit a married woman from becoming an accommodation endorser, maker or surety for another. *Harper v. O'Neil,* 194 *Pa.* 141, 44 *A.* 1065; *People's Nat. Bank v. Schepflin,* 73 *N. J. Law* 29, 62 *A.* 333; *Davies v. Simpson,* 201 *Ala.* 616, 79 *So.* 48; *Gross v. Whitely,* 128 *Ga.* 79, 57 *S. E.* 94; *Sohn v. Gantner,* 134 *Ind.* 31, 33 *N. E.* 787; *Lockhart v. Kentland Coal & Coke Co.,* 182 *Ky.* 673, 207 *S. W.* 18.

In view of the clear and comprehensive language of the Delaware Statute of 1919 respecting the liabilities of married women we can see no reason for considering cases based on statutes less explicit and general. The Delaware statute on which the plaintiff bases its right of action was passed April 21, 1919, and is found in *Volume* 30, *Laws of Delaware, c.* 197, 3048, § 16. It provides as follows:

"That the property of a married woman, whether real, personal or mixed, and choses in action which she may have acquired in any manner, and all the income, rents and profits thereof, shall be deemed to be her sole and separate property and she may sell, convey, assign, transfer, devise, bequeath, encumber or otherwise dispose of the same, and she may contract jointly (including with her husband) or separately, sue and be sued, and exercise all other rights and powers,

including the power to make a will, which a *femme sole* may do under the laws of this State."

This statute has been held to be a remedial one, and, therefore, to be liberally construed. *Heitz v. Sayers,* 2 *W. W. Harr.* (32 *Del.*) 207, 121 *A.* 225, 229. In that case the Court also said:

"Viewing this statute in the light of the limitations and restrictions in the old law, and apparently sought to be remedied by the broad language of the present act, a fair construction of it compels the conclusion that the Legislature intended to give a married woman the right to make contracts, regardless of whether they had any reference to her own property."

In an earlier case, *Kohn v. Collision,* 1 *Marv.* 109, 27 *A.* 834, 836, based on the act of 1873, it was held that a married woman was not liable on a note as surety for her husband, but the Court said:

"In no case has the wife been permitted to contract generally in respect to matters other than her own property, unless expressly authorized so to act as a *femme sole.*"

The case of *Warder, Bushnell & Glessner Co. v. Stewart,* 2 *Marv.* 275, 36 *A.* 88, was based on the 1873 statute as amended by an act passed in 1879 (16 *Del. Laws, c.* 126). The statute, as amended, provides that:

"In any case a married woman above the age of twenty-one years, may give bond with or without warrant of attorney, just as if she were a *femme sole.*"

The significance and importance of this case is found in the fact that the Court stated the meaning and effect of the words "as if she were a *femme sole,*" in substance the words that are contained in the act of 1919, upon which the plaintiff relies.

In this connection the Court said:

"The words 'as if *femme sole,*' when unrestricted by the context, have been quite uniformly considered by the courts in construing statutes relating to married women, as giving the largest possible power, and practically emancipating the wife from contractual limitations, imposed upon her as a married woman, with respect to the subject-matter of the act."

But, after all, the language of the act of 1919, is so

clear that there is no room for construction. Its obvious purpose was to make the property of a married woman her sole and separate property to give her the right to contract generally, and to sue and be sued, the same as though she was unmarried—a *femme sole*.

The defendant admits this as a general proposition, and concedes that the statute, on its face, warrants the construction that a married woman may become surety, or accommodation endorser, for her husband on a note given by him, and be sued jointly with him, or separately, in an action on the note.

But the defendant argues that the statute of 1919 cannot mean that a married woman may become an accommodation endorser for her husband because she could not sue her husband in case she had to pay his note.

It is true, generally speaking, that a surety who pays the obligation of his principal has the right to sue the principal for the sum he has paid, and an accommodation endorser would be in the same position. It may also be true that in this state a wife may not have the right to sue her husband.

In *Plotkin v. Plotkin*, 2 *W. W. Harr.* (32 *Del.*) 455, 125 *A.* 455, 457, the Court said:

"The right to sue each other strikes at the very heart of domestic relations and its effect not only upon the home ties, but upon society generally would be far reaching. For these reasons, the husband and wife should not be permitted to sue each other in a court of law unless the right is expressly granted to them by the statute under which it is claimed. * * *

"The tendency of this Court has been to construe statutes of this character strictly and to hold that no other rights are granted than those which are clearly expressed.

"Our opinion is that it is not clearly expressed by the provisions of the statute in question, that the Legislature intended to confer upon a husband and wife the right to sue each other."

In 13 *R. C. L.* 1300, *par.* 358, cited by the defendant, it is stated, as a general rule, that:

"Where a married woman is given general capacity to contract with respect to her separate estate, it is held, according to the prevailing view, that she can make contracts of guaranty or suretyship

only for the benefit of her separate estate; thus, under a statute providing that a married woman may contract as to her separate property in the same manner as if she was unmarried, it has been held that her contract to be binding on her must have reference to her separate property and must concern it; and that she did not have capacity to enter into general contracts of suretyship; that the statute was intended to specify the kinds of contracts a married woman was given capacity to enter into and the kind of property which could be resorted to in case of breach of the contract."

If this should be recognized, a married woman could not become surety for any persón unless it was for the benefit of her separate estate, and to be binding on her the contract must have reference to her separate property and must concern it.

But we do not believe the argument of the defendant goes that far in view of the Delaware case of *Heitz v. Sayers, supra.* His real contention is that the statute of 1919 does not mean that a married woman shall have the right to act as surety for her husband because it does not expressly say so, any more than it means that a married woman can sue her husband. And so, the contention of the defendant is, in the last analysis this: That a married woman cannot become surety or accommodation endorser for her husband, because she could not sue her husband if she was compelled to pay his debt.

This contention, we think, is based on the effect of the statute rather than upon its manifest meaning. But with the effect of a statute the Court has nothing to do. Certainly that is well settled law. If the statute works an injustice the remedy must be provided by the Legislature, not by the Court.

In this connection we quote from the case of *First Wisconsin Nat. Bank v. Milwaukee P. L. Co.,* 190 *N. W.* 822, the following:

"This statute, as are other statutes relieving married women from disabilities incurred by marriage at common law, is remedial in its nature, and should be fairly and liberally construed to effect the purpose intended. If experience proves that it is unwise for married women, in view of their actual situation, to be subject to the impor-

tunities of their husbands and others in the matter of the disposition of their property and the use of their separate estates, no provision of the Constitution will stand in the way of the enactment of laws limiting her right of contract.

"We express, and are called upon to express, no opinion as to the wisdom of this legislation. As this Court has said many times over, that is a matter with which the Courts have nothing to do, and one resting wholly in the discretion of the Legislature. In this case the appellant may be deprived of a substantial part of her separate estate in order that the debt of another may be paid. She may receive no benefit, or the benefits may be great. The record discloses nothing but the bare fact that she became a surety."

■ There is no mistaking the meaning of the statute of 1919 if its meaning must be gathered from its language. That it must be so ascertained is also well settled law.

The motion of the plaintiff for judgment notwithstanding the defendant's affidavit of defense is granted.