# Sloan v. Upchurch et al.

(Decided March 19, 1937.)

(As Modified on Denial of Rehearing May 28, 1937.)

B. J. BETHURUM and CHARLES N. HOBSON for appellant.

J. G. SMITH, C. C. DUNCAN and DUNCAN & DUNCAN for appellees.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

Dr. J. A. Sloan died intestate March 20, 1931, survived by his widow, the appellant Flossie Sloan, and three adult children by a former marriage, who, together with various other interested parties, are appellees. This suit to settle the estate of Dr. Sloan was filed by a creditor in June, 1933. In April, 1934, the appellant filed an answer in the case, setting up a written antenuptial contract under which she had agreed "to take one-sixth (1/6) of his entire estate, both real and personal property, in lieu of dower or any distributive share of his estate." In her answer appellant alleged that, by the terms of her contract, she was entitled to one-sixth of the decedent's gross estate, to be allowed as a preferred claim. The chancellor sustained a demurrer to this answer. However, in the order sustaining the demurrer, he construed the word "estate"

as used in the contract to mean "property, if any, remaining after the debts and liabilities of the decedent are paid in full." Thereupon appellant filed successively four amended answers, two of which were likewise denominated counterclaims and cross-petitions. A fifth amended answer was tendered in open court and marked "filed" by the clerk. However, on objection being made to the filing of this answer, the chancellor entered an order refusing to permit it to be filed, and made no order directing that it be incorporated in the record for the purposes of this appeal.

None of the answers was verified, and appellant herself admits their patent inconsistency. The chancellor sustained a demurrer to all of them, and, appellant declining to plead further, they were dismissed. It is from this ruling that she appeals.

In the original petition filed by a creditor for the settlement of Dr. Sloan's estate, the fact that Mrs. Sloan had a contract with the decedent in regard to her property rights was alleged, and it was asked that she be required to file a copy of the contract "so that her right can be determined and that a full settlement of said estate be had."

By her first amended answer, appellant alleged that at the time when she was engaged to marry the decedent it was orally agreed that she should have one-fourth of his estate, but that on the morning of the marriage decedent produced the written contract "and requested her to sign same, which she reluctantly did; that she signed same, because she did not wish to create a scene, or to undergo the embarrassment that would be hers if she refused to marry him at the time on account of his change in the terms of said contract." She likewise alleged that the decedent promised to give her an automobile and that this was a part of the consideration for the waiver of her dower and distributive rights, and that the provision in regard to the automobile was omitted from the written contract by mistake or fraud. She further alleged that the deceased, after the marriage, had, in fraud of her rights, obligated himself as surety to the extent of $20,000, for the purpose of depriving her of her rights in his estate.

By her second amended answer, appellant alleged that on the day before the death of decedent she and

Dr. Sloan had entered into a new contract by which the terms of the antenuptial contract were modified to the extent that it was agreed that she should have one-sixth of the gross estate of the deceased. She also says that the decedent did not even then disclose to her the condition of his estate, and that this was a fraud on her rights which permeated not only the postnuptial contract but also the original contract.

By her third amended answer, she alleges that at the time she signed the antenuptial contract she did not know the value of the estate of Dr. Sloan and did not know that the provisions of said contract were wholly inadequate and disproportionate to his real worth. She reiterates that decedent did not act in good faith in procuring said contract, and asks that she be allowed her dower and distributive share of his estate.

By her fourth amended answer, appellant alleges that she filed her original answer because of a promise made to the decedent the day before his death that she would not attempt to set aside the said contract for fraud after he had had his children agree that she should have a one-sixth share of his gross estate in lieu of her dower and distributive share. She says that it was not until after the repudiation of this agreement by the children that she filed her first amended answer, counterclaim, and cross-petition, in which she alleged that the contract was obtained by fraud. She also alleges that the deceased represented to her and the attorney who prepared the contract that, if she would agree to accept one-sixth of his estate, her share would be a preferred claim and that it would amount to at least $6,000 or $8,000. She says that this representation was false and fraudulent and that she would not have signed the contract had she known of its falsity. She also reiterates her allegation in regard to the alleged promise of the decedent to give her an automobile, and claims that said provision was omited from the contract by fraud or mutual mistake.

Although admitting that the various claims she has advanced are inconsistent, appellant argues that, since no motion was made to require her to elect, the inconsistency has been waived and that she may rely on all of her answers at once. Section 113, subsec. 4, of the Civil Code of Practice, provides, in part:

"If, however, a party file a pleading which contains inconsistent statements, or statements inconsistent with those of a pleading previously filed by him in the action, he shall, upon or without motion, be required to elect which of them shall be stricken from his pleading."

The demurrer of appellees did not reach the inconsistency, and from the superabundance of her allegations we can garner several causes of action on behalf of appellant. Plainly, the court should not have sustained the demurrer to all of her pleas. She should have been required by the chancellor to elect which one she would rely upon. "The primary purpose of a pleading is to advise the adverse party of the facts he will be required to meet, to furnish the court the proper criterion by which to determine the competency of evidence, and to provide a basis for the court to pronounce the appropriate judgment, to constitute a bar to any further litigation upon the same cause of action." Strong v. Louisville & Nashville Railroad Co., 240 Ky. 781, 43 S. W. (2d) 11, 13. Whether appellant desires to reform the antenuptial contract, or to set it aside for fraud in its procurement, or to rely upon a postnuptial modification or abrogation of the previous agreement or some other claim, is a matter which rests with her. It would be idle for us to attempt to discuss the merits of these claims at this time. After she has made an election, the legal efficacy of her elected claim can be determined, and, if her plea is sufficient, some degree of certainty can be obtained in the admission or rejection of testimony. As the record now stands, appellees could have no possible means of knowing what claim they will be called on to meet.

Appellees assert that the appellant made an election to stand on the original contract by her first answer and that she is now estopped to attack the agreement for fraud. It is true that where the facts out of which an estoppel arises already appear in a pleading of the party against whom it is urged, the question may be presented by demurrer. Lockhart v. Kentland Coal & Coke Co., 182 Ky. 673, 207 S. W. 18. The question before us, however, is not one of technical estoppel but of election. Appellant by her first answer did not elect to stand on the contract as construed by the chancellor. On the contrary, the basis of sustaining the demurrer to her

458

first answer was its inconsistency with the written contract filed as an exhibit therewith. The very difference between the contract as construed by the chancellor and as alleged by appellant forms a basis for her subsequent contention that the agreement was procured by fraud. Under the peculiar circumstances here presented, it seems to us that it would be most inequitable now to hold that appellant had forever barred herself from attacking the contract merely because she has once misconstrued its effect, and, as so misconstrued, relied upon it. Certainly, appellant should be required to elect, and, having elected, she should be held to her choice. We conclude, however, that the equities of the situation presented can best be subserved by permitting her now to make her election and to proceed then to try such questions as may be properly presented.

Judgment reversed.