CASE 35—ACTION TO ENFORCE A MORTGAGE LIEN ON REAL ESTATE—
·JUNE 14.

# Bitzer, &c., v. Mercke, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL.  AFFIRMED.

APPEALS—PRESUMPTION IN FAVOR OF JUDGMENT—MORTGAGES—VALID-
ITY OF JUDGMENT BARRING PRIOR LIEN—ASSIGNEE BOUND BY JUDG-
MENT AGAINST ASSIGNOR.

Held:  1. Upon appeal from a judgment dismissing an action on the
ground that it was barred by a former adjudication, the record
of the former action read as evidence in the lower court not
being copied into the transcript, it will be presumed that it
authorized the finding of the trial court as to what it contained.
2. A judgment which follows the prayer of the petition is not void,
though the averments of the petition affirmatively show that
there is no cause of action.
3. In an action to enforce a mortgage lien, G., the original holder of
a street apportionment warrant which was a superior lien on
the property, being made a defendant, and called upon to assert
his claim, if any he had, or be forever barred, and having failed
to answer, a judgment for a sale of the property to satisfy plain-
tiff's lien, and barring G.'s claim, was not void as to G., however
erroneous it may have been; plaintiff being required by Civil
Code Practice, section 692, to make all other lienholders parties
defendant.
4. The judgment being valid as to G., was valid as to one to whom
he had, prior to the action, assigned his claim without notice
to plaintiff; it being provided by Civil Code Practice, section 19,
that "in the case of an assignment of a thing in action the
action by the assignee is without prejudice to any discount,
set-off or defense now allowed."

JUDGES DuRELLE AND BURNAM DISSENTING.

SIMRALL & DOOLAN. FOR APPELLANTS.

### POINTS AND AUTHORITIES.

1 The judgment in the old case, No. 12213, Mercke v.
Meisger and Gleason, did not operate as an estoppel against
John R. Gleason or bar him from asserting his claim as against
Mrs. Mercke, because the petition in that case admitted the

priority of the Gleason claim and presented no "controversy" between the parties and left no "issue" to be tried. Strobe v. Downer, 13 Wisconsin, pp. 10-17; Spoors v. Coen, 44 Ohio State, 497-505; Munday v. Vail, 34 N. J. Law (5 Vroom), 418-424; Reynolds v. Stockton, 43 N. J. Eq. (16 Stewart), 211-215; Reynolds v. Stockton, 140 U. S., 254-273; Windsor v. McVey, 93 U. S., 282; Sheldon v. Newton, 3 Ohio State, 494-508; Lewis v. Smith, 5 Seldon (9 N. Y.), 502-520; Williamson v. Probasco, 4 Halstead (Chancery N. J.), 571-574; People v. Johnson, 38 N. Y., (11 Tiffany), 63-66; Jones v. Davenport, 45 N. J. Eq. (Stewart), 77-78; Selsbe v. Lucas, 36 Ill., 471; Knopf v. Morel, 11 Ind., 573-574; Remington v. Superior Court, 69 Cal., 633; Black on Judgments, vol. 1, secs. 184-242: Black on Judgments, secs. 617-619; Freeman on Judgments, (4th ed.), vol. 1, secs. 118-119-120-120c-257-303a-322; Herman on Estoppel, secs. 105-129.

2. Even if Gleason would be precluded by the judgment in the case No. 12213, such judgment is not binding on appellant Bitzer, who was not a party to that suit nor even a *lis pendens* purchaser, and who had no notice whatever of any proceedings had in that suit until after its termination. Holliger v. Bates, 43 Ohio State, 437.

3. Even if Bitzer and Gleason would both be estopped as against an outsider purchasing the property for a valuable consideration and without notice, such an estoppel would not operate against either of them in favor of Mrs. Mercke, who knew that the claim now sued on was antecedent and the lien superior to her own claim, and who admitted that fact to be true in her petition and purchased the property for less than her mortgage debt without paying any additional valuable consideration therefor. Pom. Eq. Jurisp. (2d ed.), secs. 745-749-750-751; Peoples Savings Bank v. Bate, 120 U. S., 556-559; Guest v. Packwood, 34 Fed. Rep., 368-375; Simms v. Richardson, 2 Litt., 276; Hunter v. Simrall, 5 Litt., 64; Nantz v. McPherson, 7 Mon., 597; Hardin v. Harrington, 11 Bush, 374.

R. C. & J. J. DAVIS, FOR APPELLEES.

POINTS AND AUTHORITIES.

1. The judgment in action 12213, Mercke v. Meisger and Gleason, is a bar to any claim of Gleason's against Mrs. Mercke, Davis or Distler. It was at most only voidable and binding on all parties until reversed, vacated, or modified. Dawson v. Litsey, 10 Bush, 412; Davies v. McCorkle, 14 Bush, 754; Francis v. Wood, 81 Ky., 22; Herman on Estoppel, pp. 107, 144; Freeman on Judgments (4th ed.), sec. 303.

2. Bitzer and Gleason were parties privy so that any judgment against Gleason was equally binding upon Bitzer.

3. The lien given for street improvement is purely statutory and can attach only to the land itself, and not to the proceeds thereof. Therefore appellants have no claim in this action against Mrs. Mercke who has parted with all title to the land. Sec. 2834, Ky. Stats.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

On September 4, 1894, an apportionment warrant for $140.52 was issued by the city of Louisville in favor of John R. Gleason for the original construction of a portion of Locust street, in front of a 'lot then owned by Matilda Schnell, now Matilda Meisger. The warrant was on the same day assigned by Gleason to Peter Bitzer. Mary M. Mercke had at the time a mortgage lien on the property to secure a note of $300. On October 10, 1896, she filed her petition in the Jefferson circuit court for the foreclosure of the mortgage, and made Gleason a party defendant, calling upon him to set up his claim, if any he had, or be forever barred. Gleason failed to answer the petition, and in January, 1897, a judgment was entered in the action enforcing the mortgage of Mrs. Mercke, and barring Gleason of any lien on the property. The property was sold under the judgment on February 15, 1897, and was purchased by Mrs. Mercke at a little less than the amount of her debt. The sale was confirmed, and deed ordered to be made to her. Thereafter, on June 21, 1897, she sold and conveyed the property to John J. Davis. On August 24, 1899, and before Davis had paid for the property, Bitzer and Gleason brought this suit asking an enforcement of the lien, and for a sale of the lot therefor. Mrs. Mercke and Davis pleaded in bar the judgment rendered in the first case, which had never been appealed from, vacated, or modified. The appellants, by

way of reply, alleged that prior to the institution of that suit Mrs. Mercke had notice of the assignment of the apportionment warrant by Gleason to Bitzer, and that Bitzer was then the owner of it; also that he had not, until a few days before the institution of the last suit, any notice of the former suit, or that Gleason had been summoned therein. He alleged that Davis still owed an amount of the purchase money more than sufficient to pay his debt, and prayed that it be subjected thereto. The proof shows conclusively that Mrs. Mercke had no notice of the assignment to Bitzer, or that he had any interest in the warrant until the institution of this suit. Upon these facts, the circuit court dismissed Bitzer's suit against Mrs. Mercke and Davis, holding that he was precluded from asserting his lien by reason of the judgment in the suit foreclosing the mortgage.

The first question in the case is whether Gleason, if he had not assigned the claim to Bitzer, could himself have maintained this action, notwithstanding the judgment pleaded in bar. The record of that case is not copied in the transcript. It is referred to as a part of the answer, and was evidently before the chancellor when he decided the case, as shown by his opinion, which is as follows: "Gleason was unquestionably the record holder of the street warrant, and the evidence shows that Mrs. Mercke, the mortgagee, had no notice whatever that Bitzer had any interest in the warrant. She proceeded properly against Gleason. He was served with process in case 12,213, read in this case as evidence, and the judgment therein passed upon his rights. That judgment is still in force, and being voidable at most, and certainly not void, it must be heeded until it is reversed or set aside by the tribunal having jurisdiction to do so. Nor can

the plaintiff's claim that his lien be transferred to the
unpaid purchase money owing by Davis be sustained. His
claim was not by contract with Mrs. Mercke, but was given
by statute against the land.     He can not sue Mrs.
Mercke for a personal judgment, and can not, therefore,
subject her personalty to the payments of her debts by
attachment or otherwise.     Neither can it be said that
the petition recognized his claim.     It expressly called
upon him to set it up or be barred for failure to do so.
The judgment followed the prayer of the petition, and
barred Gleason for failing to assert his claim, though duly
notified.     The judgment was entirely regular, and, the
court having jurisdiction to render it, it can not now be
annulled by this court, even though it were inclined to do
so.     Gleason or Bitzer had ample time to appeal from
that judgment after it was discovered by Bitzer."

It has been often held that where a record read in evi-
dence is not copied in the transcript it will be presumed,
on appeal, to support the finding of the trial court.     The
chancellor's opinion shows that this record was read in
evidence before him.     It also shows that he, having the
record before him, came to the conclusion that the petition
did not recognize Gleason's claim, and that the judgment
followed the prayer of the petition.     This court, in the
absence of the record, can not presume that the chancel-
lor erred.     Though the allegations of appellee's answer
were insufficient, still there was no demurrer to the an-
swer.     The case was submitted upon the pleadings and
proof, and the defect in the answer was cured by the evi-
dence and judgment.     The chancellor's judgment does
not rest upon the allegations of the answer, but upon the
contents of the record itself.     On the facts found by
the chancellor, the question presented is whether a judg-

ment which is prayed in the petition and is within the subject-matter of the action is void, because not warranted by the allegations of the petition.

Mrs. Mercke wished to foreclose her mortgage. The record showed a lien in favor of Gleason on the property for an apportionment warrant of $140.52. In order to foreclose her mortgage, she was required, under section 692 of the Civil Code, to make all other lienholders parties defendant to the action. The purpose of this section is to sell the entire title to the property, so that purchasers will be encouraged to bid at such sales, and sacrifice of the property avoided. Mrs. Mercke, therefore, made Gleason a defendant to her petition, and prayed that he be barred of all claim if he failed to set up his lien. He was duly served, and, failing to plead, judgment was entered in bar of his lien, and for a sale of the property under the mortgage. This judgment is now attacked collaterally, and the only question is, is it void? In Vanfleet, Coll. Attack, section 17, the rule is thus stated: "The doctrine of collateral attack denies any validity whatever to the former adjudication, while that of *res judicata* admits its entire validity, and simply denies the scope claimed for it. There is little similarity between the two doctrines. Collateral attack involves the jurisdiction of the court, and denies its power to act at all, while *res judicata* merely involves the question concerning what was actually contested and decided in the trial. The doctrine of collateral attack has nothing to do with the issue or the matters contested on the trial. A judgment on default, without any issue joined or contest made, is just as invulnerable against a collateral attack as one rendered on issue joined after a contest. . . . Right here, on the question of issues, is where many decisions have gone

astray in deciding cases of collateral attack, holding the defendant not concluded on some matter because no issue or direct allegation was made about it, and failing to notice that the absence of an allegation, or a defective one merely, made the plaintiff's complaint or petition bad on demurrer, and that the defendant was called upon to bring forward any and all defenses he might have, either of law or fact, and that a judgment necessarily barred all his rights in the subject-matter then in suit." The subject-matter in suit, in the action brought by Mrs. Mercke, was the sale of the property for the satisfaction of the liens on it. To order the sale, the court had to determine the existence or non-existence of the liens, and, if he erred, it was error of law merely, so far as he kept within the subject-matter of the suit. The judgment which was rendered being prayed in the petition, however erroneous it may have been, was not void. It is insisted for appellant that the allegations of the petition in that case showed that Gleason had a valid claim against the property, and it is maintained that, therefore, the judgment of the court holding otherwise was void. The conclusion does not follow from the premises.

Section 763 of the Civil Code of Practice provides that neither a void judgment nor one that may be corrected by the court rendering it on motion may be reversed by this court until a motion to set it aside has been made in the inferior court. Under this section, the question has often arisen whether an appeal could be taken from a judgment before a motion to correct it was made in the lower court, and in a number of these cases precisely the question made in this case arose. Thus, in Bunger v. Hart, 3 Kentucky Law Rep., 518, a judgment had been

entered upon a note for more than the allegations of the
petition warranted, but the judgment followed the prayer
of the petition. It was held an error of the court, and
the judgment was reversed, without a motion in the lower
court to set it aside. According to the rule relied on
for appellant, the judgment in that case for money that
the petition showed no right to recover was void. In
Beard v. McKay, Id., 379, where the same thing occurred,
except that the prayer of the petition did not include the
sum adjudged, it was held a clerical error. But even
in that case it was not held that the judgment was void.
In Tong v. Eifort, 80 Ky., 152 (3 R., 647) a judgment was
entered against heirs without an allegation that they had
received assets, and it also included a credit pleaded in the
answer and not denied. Yet this judgment was held to be
merely erroneous, and was reversed. In Pepper v. Thomas,
85 Ky., 589 (4 S. W., 297) judgment was rendered allotting
dower in an entire tract of land described in the petition
when plaintiff was entitled to dower in only one-third of it,
yet it was held that the judgment was not void, and, after
the expiration of the term, the court had no power to set it
aside. In Kimbrough v. Harbett 110 Ky., 94 (22 R., 1578),
(60 S. W., 836) judgment had been entered on a petition in
equity adjudging plaintiff a lien on a tract of land, and
directing a·sale of the land for the payment of his debt.
The defendant then undertook to attack the judgment
collaterally, in a separate action, on the ground that the
allegations of the petition showed that the plaintiff had
no lien on the land. The court said: "We need not de-
termine whether the petition was sufficient to entitle ap-
pellant to relief in equity. The court had jurisdiction
of the parties and of the subject-matter, and, if he erred
in determining the relief to be awarded appellant, this

did not render the judgment void.    The question what
relief, if any, the appellant was entitled to under the alle-
gations of the petition, which were confessed by appellee's
failure to answer, was necessarily presented to the court
when the case was then submitted, and, if he erred in his
decision, the only way to correct it was by appeal.    Har-
din v. Hardin, 6 Ky Law Rep., 662; Bridgford v. Fogg
12 R., 570 (14 S. W., 600); Cheatham v. Whitman, 86 Ky.,
614, 9 R., 761, 6 S. W., 595. No appeal has been taken from
that judgment. It remains in full force.  The court below,
after the expiration of the term at which it was rendered,
had  no  power  to  vacate  or  modify  it,  except  upon
the  grounds  set  out  in  section  518  of  the  Civil
Code  of  Practice,  none  of  which  are  alleged." To
same  effect  see  Blackburn  v.  Mann,  3  Ky.  Law
Rep., 757; Christy v. Garrity (14 R., 910) (22 S. W., 158);
Peyton  v.  Moore,  12  Ky.  Law  Rep.,  121;  Blackwell
v.  McBride,  14  Ky.  Law  Rep.,  760;  Moss  v.  Wolf,
16 Ky Law Rep., 398; Freem. Judgm., sections 135-135a.

The authorities relied on for appellants do not conflict
with the foregoing.    As has been said by the United
States supreme court, if in an action for money the court
should sentence the defendant to imprisonment in the pen-
itentiary, or in an action for the possession of real estate,
the court should adjudge the probate of a will, the judg-
ment would undoubtedly be void.    Windsor v. McVeigh,
93 U. S., 274 (23 L. Ed., 914).    But the line must be drawn
somewhere between error of the court and want of juris-
diction.    All the cases concede this, and there seems to
be no real authority for the proposition that a judgment
may be attacked collaterally for a defect in the pleadings.
The case of Strobe v. Downer, 13 Wis., 10, 80 Am. Dec.,
709, involved a common-law foreclosure, which is entirely

a different proceeding from that established by our Civil Code of Practice. In the subsequent case of Allie v. Schmitz, 17 Wis., 169, the same court emphatically repudiated the doctrine relied on for the appellant. In that case a bill in equity for partition was filed against a husband and wife, in which it was alleged that the wife owned an undivided one-third of the land. Without answer, a decree was rendered that the husband and wife owned the undivided one-third, and it was set off to them jointly. Afterwards the wife sought to recover the land on the idea that the decree was void so far as the husband was concerned, but the court held it was not void, and could not be attacked collaterally. We therefore conclude that the judgment in question was not void, however erroneous it may have been, and was conclusive on Gleason if he had remained the owner of the apportionment warrant.

It remains to determine whether it is also conclusive upon his assignee Bitzer. Under section 19 of the Code of Practice, "in the case of an assignment of a thing in action the action by the assignee is without prejudice to any discount, set-off or defense now allowed," and by section 474 of the Kentucky Statutes, bonds, bills, or notes are assignable so as to vest the right of action in the assignee, but not to impair the right to any defense, discount, or offset that the defendant had before notice of the assignment. While this section only applies to bonds, bills, or notes for money or property, the rule it announces is followed, under section 19 of the Code of Practice, in the case of an assignment of a thing in action, where the assignment is not authorized by statute; and the action by the assignee is without prejudice to any defense acquired by the defendant without notice of the assign-

ment. 2 Pom. Eq. Jur., sections 702, 703.    By reason of
her mortgage, Mrs. Mercke was in equity the owner of
an interest in the lot to the extent of her debt.    On this
property the apportionment warrant was also a lien.    It
was a lien on the entire title, including the equitable title
of Mrs. Mercke.    If she had paid off the lien to Gleason
while he was the record holder of it, without notice of
the assignment to Bitzer, she would clearly have been
protected.    Any other defense which she acquired against
Gleason in good faith, and without notice of the assign-
ment, is as fully within the rule as a payment by her
would have been.    The purpose of the rule is to protect
the defendant in all defenses acquired in good faith be-
fore notice of the assignment.    If the judgment barring
Gleason did not protect her against Bitzer when she had no
notice of the assignment, then the purpose of the statute,
in requiring all lien holders to be made defendants to the
action, would be defeated, and a purchaser at such sales
would never know when he was safe in buying the prop-
erty; for no amount of diligence could protect him from
secret assignments, which might be asserted against him,
although all the holders of liens, so far as the record
showed, were properly before the court.    By reason of
the judgment in the foreclosure case, and her purchase of
the property under it, Mrs. Mercke acquired all the title
of the parties to the action in the property, and Gleason
was estopped to assert any title as against her.    This
defense acquired by her against Gleason, without notice
of the assignment to Bitzer, is equally available against
Bitzer; for otherwise there would be no security in titles
obtained at judicial sales.    The judgment of the chan-
cellor, being in accord with these views, is affirmed.

Judge Burnam's dissenting opinion:

That we may clearly understand the legal question involved upon this appeal, it is necessary that a brief summary of the facts out of which the litigation grew should' be recited in chronological order. On the 4th of September, 1894, an apportionment warrant for $140.52 was issued by the city of Louisville in favor of John R. Gleason for the original construction of that portion of Locust street in front of a lot 50 by 165 feet, on the corner of Locust and Charlton streets, owned at that time by Matilda Schnell, who became by marriage Matilda Meisger. This warrant was on the same day transferred and assigned by Gleason to Peter Bitzer. On October 10, 1896, Mary M. Mercke filed her petition in the Jefferson circuit court against J. C. and Matilda Meisger (nee Schnell), for the enforcement of a mortgage lien to secure the payment of a note for $300, held by her upon the same lot. She made J. R. Gleason a party defendant, having discovered from the records of the board of public works the existence of apportionment warrants previously issued to him against the same property. The petition set forth the warrant standing in Gleason's name, giving the date, the amount thereof, and the name of the party against whom issued, and called upon Gleason to set up his claim thereunder, as provided by section 692 of the Civil Code of Practice. In her petition she stated that the mortgage lien held by her was superior to all other liens against the property, except that of the apportionment warrant held by Gleason. John R. Gleason never answered in that proceeding, and a judgment was entered in January, 1897, enforcing the mortgage lien of Mrs. Mercke, and barring Gleason of any lien or claim upon the prop-

erty.    Under this judgment the property was sold on the 15th day of February, 1897, to Mary Mercke, at a little less than the amount of her debt, interest, and cost.    The sale was confirmed, and deed directed to be made to her. Thereafter, Mary Mercke, on the 21st day of June, 1897, sold and conveyed the property to John J. Davis for $580, of which $550 was unpaid at the date of the institution of this suit.    He, however, in the meantime, conveyed a small portion of the lot to one Charles Distler.    On the 24th of August, 1899, nearly five years after the issual of the apportionment warrant to Gleason, appellants, Bitzer and Gleason, brought this suit, and ask an enforcement of the lien for the apportionment warrant, and for a sale of the lot, making the parties in interest defendant.    The appellees, Mercke, Davis, and Distler, in a joint answer, pleaded the judgment rendered in the suit of Mary M. Mercke against Matilda Schnell, and the sale thereunder, as a bar to appellants' claim; and further alleged that the judgment in that proceeding had never been appealed from, reversed, vacated, set aside, or modified.    The appellants, by way of reply to the answer of defendants, said that Mary M. Mercke, prior to the institution of her suit against J. C. and Matilda Meisger, had notice of the fact that Gleason had transferred and assigned the apportionment warrant to the appellant Bitzer, and that Bitzer was, at the institution of that suit, the owner and holder thereof, and that he had never at any time, until a few days before the institution of this suit, had any notice that Mary Mercke had instituted a suit to enforce her mortgage lien, or that Gleason had been summoned therein, and alleges that Davis still owed $550 upon the purchase money, and prayed that the proceeds of the note given by Davis to Mercke, or so much as might be

Bitzer, &c., v. Mercke, &c.

necessary, be applied to the satisfaction of the lien under the apportionment warrant. The proof, we think, shows conclusively that Mrs. Mercke, the mortgagee, had no notice whatever that Bitzer had any interest in the warrant until the institution of this suit. Upon the facts above stated, which are for the most part set forth in the pleadings and not in dispute, the lower court dismissed Bitzer's suit against the appellees, Mercke, Davis, and Distler, and held that Bitzer was precluded from asserting his lien claim by reason of the julgment entered in the suit of Mercke against Schnell. The case turns entirely upon the effect of the decree and sale in the old suit. Did it operate as an estoppel against John R. Gleason or his assignee, and does it bar him from asserting his claim as against Mrs. Mercke or the lot in question? Or, in other words, was the judgment in that case, in so far as it assumed to bar the claim of Gleason, an erroneous judgment, which could only be cured by appeal, or was it an absolute nullity, which could be disregarded in a collateral proceeding to subject the same property by the prior lien? It is a universal rule that courts have no power to adjudicate matters not involved in the issues in the case before them, and such adjudications, if made, are not binding upon the persons who are not parties to the proceedings.

In Black, Judg. section 184, the author, in discussing the effect of a judgment not in issue, says that: "Undoubtedly, a judgment so pronounced would be irregular and erroneous, as being contrary to the course of law and the usual practice of the courts, and would therefore be liable to reversal. But whether it should be regarded as entirely void—a mere nullity—is a question involved in more difficulty. That no such result could properly follow is

contended by Mr. Freeman, on the general principle that, 'when jurisdiction over both parties and the subject-matter is once obtained, no error committed in the exercise of that jurisdiction can make the proceedings or judgment of the court void.' This may readily be conceded. And yet, in no proper sense, can a court of law be said to have jurisdiction if there is no specific question or controversy submitted for its determination. It is not enough that the parties are properly in court. That does not give the tribunal power to adjudicate any and all matters of difference between them. When we speak of 'jurisdiction of the subject-matter,' we do not mean merely cognizance of the general class of actions to which the action in question belongs, but we also mean legal power to pass upon and decide the particular contention which the judgment assumes to settle. And how can a court acquire jurisdiction of the particular contention, except it be clearly marked out and precisely defined by the pleadings of the parties? And how can that be done, in any mode known to the law, save by the formation of a regular issue? There is therefore plausible ground for holding that, if the record fails to show an issue to be determined, the judgment will be void on its face."

The case of Strobe v. Downer, 13 Wis., 10 (80 Am. Dec., 709), is a case much like that at bar. The syllabus states correctly what is decided, and is as follows: "The first mortgagee, who is made a defendant to a suit for the foreclosure of a second mortgage without any allegation in the complaint contesting his title, has a right to assume that the proceding is to be conducted upon the theory that his lien is paramount to that of the plaintiff. A second mortgagee brought an action of foreclosure, making the first mortgagee a defendant under the general

allegation only 'that he had or claimed some interest in
the mortgaged premises,' and a judgment was rendered
containing the usual clause, barring the defendants of all
their rights, etc., and the second mortgagee bought the
mortgaged premises at the foreclosure sale, and received
the sheriff's deed therefor.    The first mortgagee, at the
time the foreclosure suit was brought, had assigned his
mortgage, but the assignment was never recorded, and
the second mortgagee had no notice of it at the time of the
foreclosure sale.    Held, that the rights of the first mort-
gagee, had he continued to hold his mortgage, would not
have been cut off by the foreclosure and sale, and conse-
quently the rights of his assignee were not cut off there-
by."

. And the case of Munday v. Vail, 34 N. J. Law, 418, it
was held: "A decree on any question which is entirely
outside of the issues raised in the record is invalid, and
will be treated as a nullity, even in a collateral proceeding."
The court, speaking through Chief Justice Beasly, says:
" 'Jurisdiction' may be defined to be the right to adjudge
concerning the subject-matter in a given case.    To con-
stitute this, three things are essential: First, the court
must have cognizance of the class of cases to which the
one to be adjudged belongs; second, the proper parties must
be present; and third, the point decided must be, in sub-
stance and effect, within the issue.    That a court can not
go out of its appointed sphere, and that its action is void
with respect to persons who are strangers to its proceed-
ings, are propositions established by a multitude of au-
thorities.    A defect in a judgment arising from the fact
that the matter decided was not embraced within the is-
sue has not, it would seem, received much judicial con-
sideration, and yet I can not doubt that, upon general

principles, such defect must void a judgment.    Persons,
by becoming suitors, do not place themselves, for all pur-
poses, under the control of the court, and it is solely over
those particular interests they choose to draw in ques-
tion that a power of judicial decision arises.    . . . A
judgment upon a matter outside of the issue must of
necessity be altogether arbitrary and unjust, as it con-
cludes a point upon which the parties have not been heard.
And it is upon this ground that the parties have been
heard, or have had the opportunity of a hearing, that the
law gives so conclusive an effect to matters adjudicated.
    . . . Thus, Lord Coke, treating this doctrine, says:
'A matter alleged, that is neither traversable nor material,
shall not estop' (Co. Litt. 353b); and in the note to the
Duchess of Kingston's Case, Smith, Lead. Cas., 533, Baron
Comyn is vouched for the proposition 'that judgments are
conclusive as to nothing which might not have been in
question, whether or not material.' "

In Reynolds v. Stockton, 43 N. J. Eq., 211 (10 Atl., 385),
a judgment of a court of New York was pleaded in bar
of an action brought in a court of New Jersey.    The
New Jersey court inquired into the jurisdiction of the
New York court to determine the question, and held that
it had not jurisdiction, for this reason:    "The decree in
New York having adjudicated a matter not presented by
the pleadings, nor within the issue, can have no higher
effect than a judgment rendered in our own courts un-
der like condition, and must be treated as a nullity."    This
case was carried to the supreme court of the United
States upon a writ of error, where it was affirmed in an
opinion delivered by Justice Brewer, reported in 140 U.
S., 254 (11 Sup. Ct., 773. 35 L. Ed., 464).    He said, in
giving the reasons for affirming the judgment, that, when

a defendant appears in an action in a State court, and responds to the plaintiff, has filed his answer, but takes no subsequent part in the litigation, and on these pleadings a judgment is rendered in no way responsive to them, he is not estopped by the judgment from setting up that fact in bar of a recovery upon it. In the opinion he uses this language: "In order to give a judgment rendered by even a court of general jurisdiction the merit and finality of an adjudication between the parties, it must be responsive to the issues tendered by the pleadings."

We could indefinitely multiply authorities from courts and text writers sustaining this view, but content ourselves with the above citations.

Section 692 of the Civil Code of Practice provides that "the plaintiff in an action for enforcing a lien on property shall state in his petition the liens held thereon by others, mking them defendants; and may ask for and obtain a judgment for the sale of the property to satisfy all of said liens which are shown to exist and though the defendants failed to assert their claim. Such defendants shall not however be allowed to withdraw or receive any of the proceeds of such sale until they have shown their right thereto by answer and cross petition." Under this provision of the Civil Code of Practice, it was the duty of Mrs. Mercke, when she brought her suit to enforce her mortgage lien upon the lot in question, to state in her petition the liens held thereon by others, and to make them defendants. If there was no controversy between her and the other lienholders as to the validity and priority of the liens asserted to exist, she was entitled to a judgment for the sale of the property to satisfy all of the liens, even though the other lienholders failed to assert their claims; and when she dis-

tinctly set out the nature of Gleason's lien, the amount thereof, and stated that it was a lien on the property superior to her own, he had a right to assume that, without answer, his rights were not to be affected by the proceedings.    Her own averments admit the priority of his claim, and raise no controversy to be tried; and the only judgment which could have been properly rendered was one decreeing a sale of the property to satisfy—First, the claim of Gleason; and, second, her own.

There is no question of a *bona fide* and innocent purchaser for value involved in this case.    Mrs. Mercke became the purchaser of the lot under the judgment rendered in her favor, and she occupied no worse position after the sale than before.    If appellant's claim against the lot was superior to hers before the sale it continued to be good after; and, in my opinion, the judgment, in so far as it assumed to bar the claim of appellant Gleason, was altogether outside the issues made by the pleadings, unauthorized by the provision of the Code, and an absolute nullity.

Judge DuRelle concurs in this dissent.