## George, et al. v. Ford.

(Decided March 21, 1919.)

### Appeal from Pike Circuit Court.

1. Estoppel—Relying or Acting Upon Representations.—A person who induces another to believe and act in a certain manner will not afterwards be permitted to prejudice or injure such person because of the acts or things he did under the belief that they were consented to.

2. Estoppel—Acts Inducing Payment of Money.—Acts and conduct of the appellants in inducing the appellee to pay money under contract estop them from now claiming that the contract had been cancelled and annulled.

JAMES M. ROBERSON and H. H. COOPER for appellants.

J. J. MOORE for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Under an agreement dated September 14, 1916, appellant, George, in consideration of the agreement on the part of his co-appellant, Nerny, to subscribe for $3,000.00 of stock in the Detroit-Kentucky Coal Company (hereinafter referred to as the coal company), agreed to assign to Nerny $1,500.00 par value of George's holdings in said company immediately upon the payment of said $3,000.00. For the sake of brevity said appellants will be referred to by their surnames.

George was president of the coal company and Nerny vice-president. Between November 8, 1916, and January 12, 1917, Nerny paid to the coal company, pursuant to said agreement, the sum of $2,534.17, leaving a balance due of $465.83; Nerny claimed he had paid said balance but this was denied by the appellant George. Representing that he was the owner of 340 shares of stock in the coal company and entitled to the 150 shares referred to in the previous agreement, having fully complied with the terms thereof, Nerny agreed to and did sell and transfer to one Kandt all of his stock in the coal company, including the 150 shares above referred to, the consideration being $3,500.00, to be paid, $10.00 cash upon the execution and delivery of the contract; $990.00 on or before June 9, 1917, and $2,500.00 on or before July 9, 1917.

June 7, 1917, Kandt for a valuable consideration sold, transferred and assigned to appellee all of his right, title and interest in and to said contract, including the 150 shares of stock above mentioned. Appellee paid the amount agreed to and had issued to him 340 shares of stock in the coal company.

Appellee (plaintiff below) alleged in his petition that on June 9, 1917, and before he paid any money under the contract assigned to him by Kandt, he entered into a verbal agreement with the appellant George by which it was agreed that if appellee would comply with the contract hereinabove referred to he (George) would cause to be issued to the appellee the 150 shares of stock in question, and this agreement was confirmed by a letter dated June 14, 1917, addressed to the appellee by the appellant George. The letter is made a part of the petition, and contains this language: "In the total he had paid $2,534.17, which leaves him to fulfill a contract between he and I to benefit the company the difference of $465.83. He has credited himself with salary and issued to himself stock to make up the difference and that is not cash as our agreement called for. I will gladly issue to you the $1,500.00 of my stock when this agreement is fulfilled according to the contract."

It was further alleged in the petition that George was anxious for appellee to acquire the interest of Nerny. The prayer of the petition was that George be enjoined and restrained from selling the 150 shares, as it is alleged he was attempting to do, and that he be compelled to transfer and assign same to appellee.

The material averments of the petition were put in issue by an answer, George admitting the execution of the contract of September 14, 1916, but claiming that Nerny had not complied therewith, in that he did not make the payments immediately as therein provided. He denied that the letter of June 14, 1917, confirmed any verbal agreement with appellee; he alleged that he made a demand on Nerny in January, 1917, to furnish $350.00 to take care of a payroll of the coal company; this Nerny failed to do. An amended petition set forth the fact that the coal company had filed suit against Nerny seeking to recover the balance of $465.83, and had attached sufficient property of Nerny to pay said debt and costs. At the time this amendment was filed appellees paid into court the sum of $465.83, same to be paid the coal com-

pany in the event it was decided Nerny was indebted to this extent, or any part thereof, by reason of his contract.

In an amended answer George alleged that at the time Nerny failed to furnish the money for the payroll, amounting to $350.00, it was agreed between them (George and Nerny) that the agreement on the part of George to assign and transfer to Nerny the 150 shares of stock should be cancelled and annulled, and it was further agreed that the copies of said contracts would be destroyed, and one of them was in fact destroyed forthwith—this was January 17, 1917.

Nerny answered setting forth the original agreement and the subsequent agreement to cancel so much thereof as required George to deliver the 150 shares of stock in question, and that appellee was not entitled to said 150 shares, but alleged that his copy of said agreement was not destroyed because he was not satisfied with the actions of said George in his relations with the coal company.

The coal company filed an answer setting forth its suit against Nerny, and by reason thereof it had attached sufficient funds to secure this indebtedness; that it had no desire to prevent the issuance of 150 shares of stock to appellee.

In a reply to the answer of George appellee set out the letter of June 14, 1917, and of the writer's willingness to transfer this stock to appellee upon the payment of the money, alleging that by reason of said letter and the representations made by George, and which were long after the alleged failure of Nerny to pay the balance aforesaid; appellee paid the consideration called for in the contract between Nerny and Kandt, which appellee had assumed, and further that he had deposited with the clerk $465.83, to be held by the court to secure the payment of this sum, in the event it was found to be due the coal company.

Replying to the amended answer of George and the answer of Nerny, appellee denied the affirmative allegations of said pleadings; alleged that George recognized the existence of said contract and represented to the appellee that the contract was in full force and effect, and induced appellee to part with his money by reason of said representation; and that he would not have entered into said contract to purchase said stock, nor would he

have paid anything thereunder but for said representation. No disclosure was made to appellee by George or Nerny as to the alleged agreement to cancel the original contract; appellee alleged that both the appellants were estopped to plead or rely upon the rescission or cancellation of said contract.

In a second amended answer of George and an amended answer of Nerny, it is alleged that Nerny informed Kandt, appellee's assignor, of the agreement between George and Nerny to cancel the contract, and that appellee did not pay the balance referred to until after the suit was brought, and the letter having been written, after the sale and transfer of the contract to appellee, there was no consideration for same.

The affirmative allegations of said pleadings were denied in a reply, in which appellee set forth a letter dated June 6, 1917, from Nerny to George and the answer of George under date of June 8, 1917. In his letter Nerny says:

"Re letter of the 2nd. In relation note at the bank I want it paid. Your agreement was to pay it from the first money you received, and Kandt tells me you paid yourself for what you loaned the Co.

"Kandt tells me you want to repudiate the $1,500.00 stock you owe me. If that is a fact its nice treatment you are giving me after my loyalty and sacrifices to stand by you."

George, in his reply, writes: "I have not the money to take care of this note, neither has the company. Consequently your stock is held here and you stand a chance of losing it. In regard to that contract between you and I, that was to be taken care of and stock issued to you when you paid $3,000.00 cash to start off the company, and up to the present date you have only paid in to the treasure $2,534.17 according to your own figures, the balance due the company is $465.83."

It was alleged that by said letters both appellants recognized the existence and validity of the contract at that time, this being subsequent to the date of the alleged agreement between George and Nerny to cancel the agreement as to the 150 shares.

A rejoinder was filed to this reply. Several demurrers were filed during the course of the proceedings, and the case was finally submitted on the demurrers of

the appellee to the answer as amended of George and Nerny; also submitted upon the demurrers of appellants to appellee's replies.                                    -

The court rendered a judgment sustaining the demurrers to the answers as amended of the appellants and overruled their demurrers to the appellee's replies. Appellants having declined to plead, further, it was ordered by the court that George be enjoined and restrained from selling the 150 shares of stock in the Detroit-Kentucky Coal Company, and ordering and directing him to transfer said stock to appellee within 30 days, and if not so tranferred within that time the proper officers of the coal company were ordered and directed to cancel said stock upon the books of the company and to issue in lieu thereof a certificate for 150 shares of stock to the appellee. From this judgment an appeal has been taken to this court.

We have given the substance of the pleadings at some length, the case having been disposed of on the several demurrers mentioned.

It is contended by appellant, in his brief, there was no consideration for the promises contained in the letter of June 14, 1917, same having been written and delivered after the transfer from Kandt to appellee, that the money was not paid immediately as called for in said contract, and further that appellants had cancelled the contract to transfer 150 shares

While admitting Ford had no knowledge of the alleged cancellation appellants rely upon the familiar doctrine that an assignee can be in no better position than his assignor. Pomeroy's Equity Jurisprudence sec. 709; Bitzer v. Mercke, 111 Ky. 299.

Appellee concedes this to be the law, but contends the rule does not apply to this case, because there is an exception recognized by the law in transactions pertaining to the assignment and transfer of shares of stock. Authority for this position is found in Pomeroy's Equity Jurisprudence, sec. 710.

But there is another issue in this case, and one, in our judgment, conclusive of this appeal, that of estoppel—relied upon by appellee—and which seems to have been the ground upon which the lower court sustained the appellee's demurrers and overruled appellants' demurrers. Estoppel is so called ''because a man's own act or ac-

ceptance stoppeth or closeth up his mouth to alleage or plead the truth.'' Cokes Littleton, sec. 335a.

In Trimble v. King, 131 Ky. 1, speaking of the doctrine of estoppel, the court says: "It may be said to rest upon the doctrine that a person who has induced another to believe and act in a certain manner will not afterwards be permitted to prejudice or injure such person because of the acts or things that he did under the belief that they were consented to.''

The allegation that appellants between themselves agreed, because of the non-payment of the $465.83, to cancel the contract in so far as it required George to transfer the 150 shares of stock is quite inconsistent with the letter of June 6th, 1917, written by Nerny to George and the latter's response thereto under date of June 8, 1917, in both of which the contract is treated as being valid and subsisting. If there had been a cancellation or annulment of this agreement, which is supposed to have taken place prior to the date of these letters, we see no reason for writing these letters; furthermore, appellee did pay for the stock in question the sum of $3,500.00, including the deposit in the court, thereby fully complying with his agreement, but this money was not paid until after the agreement on the part of George made to appellee, that he (George) would comply with the contract in every particular if appellee would pay to Nerny the amount called for, and this verbal agreement was confirmed in the letter of June 14, 1917, from George to appellee, and but for the assurance contained in said letter appellee alleges he would not have paid same.

In our judgment the record discloses such acts and conduct on the part of appellants as to estop them from setting up or relying upon the defenses set forth in the pleadings.

In speaking of estoppel we find in 16 Cyc. 719, this statement: "There are two sorts of what has been termed 'estoppel by contract,' viz.: (1) estoppel to deny the truth of facts agreed upon and settled by force of entering into the contract, and (2) estoppel arising from acts done under or in performance of the contract.''

No special benefit will be gained by going into a detailed discussion or consideration as to the meaning, application, or elements of the doctrine of estoppel. We are satisfied from an examination of the record before us

that appellee, relying upon the statements made to him by George, paid the money referred to in the pleadings and but for the representation so made he would not have parted with his money.

As to the point that there was no consideration for the promise of George, contained in his letter of June 14, 1917, it is sufficient to say that if Nerny had paid the entire amount, the contract would then have been complied with and the stock should have been issued, and if the balance referred to had not been paid, then his letter was an invitation to the appellee to pay it, and he agreed in said letter to issue the stock when the agreement was fulfilled, that is, the balance paid. When appellee ascertained there was some question as to the payment of this balance, he then paid the amount into court. It will be remembered that the company itself filed a suit and attached funds sufficient, according to their pleadings, to insure the payment of said amount, so we think the plea of no consideration is without merit.

The point that the money was to have been paid immediately, and failing in this the contract was not binding, we think was waived by the letter of June 14, 1917, because at that time George was willing to carry out the contract upon the payment of the money. As to the cancellation alleged of the contract between George and Nerny it will be recalled that this transaction took place after there had been a payment in fact of $2,534.17, and it is hardly probable that they would have cancelled this contract after the payment of this substantial sum. Furthermore, the letters between Nerny and George, of June 6th and 8th, 1917, clearly show that at that time they did not treat the contract as having been cancelled, nor did appellee have any knowledge of the alleged cancellation, and even though he had, the letter and acts of George were so inconsistent with any such fact as to estop George from now claiming the contract was cancelled.

The court did not err in reaching the conclusion which it did. The judgment is affirmed.