## Skaggs v. Ferguson.

(Decided May 29, 1928.)

### Appeal from Lawrence Circuit Court.

1. Insurance.—Father, not directing four of his six children to return promptly life insurance policies delivered to them, though he knew that insurer declined to issue policy to one of the six before his

note for first premium on all six policies became due, could not rely on failure of insurer's agent to obtain all six policies as provided by contract to defeat latter's recovery of premium on such four policies; it being his duty to cause children, who were his agents to receive and accept policies, to return them within reasonable time after learning that entire contract could not be carried out.

2. Estoppel.—One may be precluded from asserting a claim which would be meritorious except for his conduct.

3. Insurance.—Father, knowing that insurance policies had been issued and accepted by his children, could not deny validity of his promise to pay first premiums thereon to prejudice of agent procuring policies in reliance on such promise.

4. Estoppel.—It is the general rule that a party may not keep silent when he ought to speak, and allow other parties to be misled to their prejudice by his silence.

5. Estoppel.—One may be denied a right asserted because of his neglect to do something which he should have done at a proper time.

6. Insurance.—Whether company issuing life insurance policies was authorized to transact business in state held immaterial and unnecessary to consider in its agent's action for first premiums on policies.

7. Insurance.—Whether insurance agent, suing for first premiums on life policies issued to defendant's children, agreed to purchase an automobile from defendant, who was engaged in selling automobiles at time of contracting to pay such premiums, was immaterial and collateral matter, unnecessary to consider in absence of evidence of how defendant lost anything because of plaintiff's refusal to buy.

W. D. O'NEAL, A. O. CARTER and CAIN & THOMPSON for appellant.

GEORGE B. MARTIN and C. F. SEE, JR., for appellee.

Opinion of the Court by Judge Logan—Affirming.

The appellee, Ferguson, at the time of the transactions detailed in this suit, was the agent of the National Life Insurance Company of Montpelier, Vt. He lived in Huntington, W. Va.

The appellant, Skaggs, at the time of the transactions, lived in Blaine in Lawrence county, Ky. Appellee procured applications for policies for $10,000 each from the six children of appellant, Skaggs. After the medical examination of these applicants, but before the applications had been finally accepted by the insurance company, appellee procured from appellant a note for $1,-

942.60 in payment of the first premium on all six of the policies. Before the applications were written, appellant had agreed that he would pay the first premium for all of his children.

When the note became due, it was not paid, and a disagreement arose between the parties which resulted in this litigation. The lower court peremptorily instructed the jury to return a verdict for appellee for the amount sued for, which was not the face of the note, as one policy was never issued and another was not accepted when it was tendered. The premiums of these two policies were deducted from the face of the note, and judgment rendered for $1,300.70, with interest.

There is no great variance in the evidence of appellee and that of appellant. Their evidence is to the effect that Ferguson came to the home of Skaggs in the summer of 1925 and sought to obtain an application for insurance from one of his children. This led to a talk between appellant and appellee, and appellant substantially agreed with appellee that, if each of his six children would take a policy, he would pay the first premium on each policy. Acting upon this agreement, appellee sought out the children of appellant, and after some weeks he procured applications from each of them. Stripped of all surplusage and immaterial matters, the controversy arose over the disagreement as to the terms of the contract which led to the execution of the note. Appellee seems to testify that he had complied with the terms of the contract when he procured the application from each child and caused each to be examined by a physician and a favorable report had been made in each case by the physician. Appellant, on the other hand, seems to testify that the contract was an entirety, and insurance must have been obtained by each of his children or he was not bound on his agreement to pay the first premium.

At the time he executed the note for $1,942.60, the medical examinations had been completed, with a favorable report in each case by the medical examiner. The applications were sent to the home office of the insurance company. It sought and obtained further information about the applicants, and as a result of that additional information it declined to issue a policy on the life of one of the sons. We do not know the reason. Appellant, therefore, contends that the failure of one of his sons to obtain a policy was a breach of the entire contract, and that he was released from all obligation on the note

which he had executed. His contention appears sound, looking at it in the light of the evidence. He wanted all of his children to be treated exactly alike, and he so told appellee. If one failed to obtain a policy, he was not bound by the terms of the contract unless something thereafter happened which prevented his taking advantage of the breach of the contract, or rather the lack of ability to carry it out on the part of appellee. In this transaction the contract was between appellant and appellee, and not between the children of appellant and appellee. Under the agreement the children of appellant became his agents to receive and accept the policies which were to be issued. Appellant was under the duty to see that the policies were not accepted unless the terms of the agreement between him and appellee were carried out. The children could not accept the policies and retain them longer than was necessary to ascertain essential facts and the appellant escape liability for the first premium. The appellant had to know that the terms of the contract between him and appellee had not been carried out before he was compelled to take any action himself looking towards performing the duty which was placed upon him because of some of his children's having accepted policies. It is admitted that after appellee learned that one of the sons would not receive a policy from his company, and after he had learned that one of the daughters had refused to accept the policy upon its tender, he went to appellant and talked with him, and insisted that appellant execute a new note for $1,370 in place of the note for $1,942.60. Appellant declined to do so. It is also in evidence that appellee suggested that an effort be made to obtain a policy for a like amount in some other good company on the life of the son who had failed to obtain a policy from his company. This negotiation went far enough that appellee arranged for a medical examination for the son, but the son failed to keep the appointment.

We have then this situation: Appellant agreed with appellee that he would pay first premium on a policy of insurance for each of his children, if a policy could be procured for each of them. Applications were made for policies by each of the children, but one of them failed to obtain a policy and another refused to accept the policy. These facts were brought to the attention of appellant at the time, or very soon after, they happened. Appellant did nothing until after the note which he had

executed became due; whereupon appellee instituted suit against him for the amount of the premiums on the four policies which were received by the four children. Appellee testified, and it is undenied, that he had forwarded to his company the full amount of the first premiums on these four policies. If, upon receiving the information that one of his sons failed to obtain a policy, or probably after receiving information that one of his daughters had changed her mind and refused to accept a policy, appellant had promptly acted and caused his other children to return the four policies immediately, he would have been in position to successfully resist the payment of the premiums on the four policies. If the policies had been delivered to him instead of to his children when he learned of the inability of appellee to carry out the contract, he would have been placed under the duty of standing on his contract and returning the policies, or of electing to carry out the contract pro tanto. The fact that the policies were delivered to the children did not change that situation. This brings the entire matter down to the one question, and that is whether he caused his children to return the policies within a reasonable time after he learned that the contract in its entirety could not be carried out. The question must be determined from the evidence. If he elected to stand on his contract, although only partly performed, and made that election seasonably after he learned all of the facts, he is bound, and the judgment against him was proper. If he elected to repudiate the contract and acted seasonably in the matter, he is not bound.

Appellant testified that the reason he executed the note was that ''he represented to me that all had passed the examination and would get the policies.'' He then testified that, after he had executed the note, he learned that his oldest boy, Elbert, did not receive a policy, and that he saw appellee, who at the time wanted him to take the note back and make another one. This is the substance of all the evidence given by appellant himself. Appellee testified, after going into the entire transaction rather fully, as follows:

> ''I came back to Louisa and saw Elbert, and told him about the National Life Insurance Company would not accept his application, and of course he wanted to know why, and all the information we could get was, 'declined on account of confidential

information,' and knowing that other companies would probably accept him I asked him what time it would be most convenient to be examined for another company, and he said most any time, and we set the time at 5 o'clock that evening at Dr. Burgess' office, and he did not come, and the next day I saw him, and he said his father would not let him come."

The court sustained an objection to what he said about his father. Appellee testified that he saw appellant after the failure of his son to obtain a policy, and tried to get him to execute a new note in lieu of the first note, and that appellant refused to do so.

Appellant does not claim that he made any effort to have the four policies returned which were accepted, although he admits that he learned all the facts before the note which he had executed had become due. Tenny Wheeler, one of his children, promptly returned her policy, and refused to accept it when it was tendered, and there can be no question that she acted promptly, and there is no effort in this suit to hold appellant responsible for the premium on her policy. Mary Conley, another daughter, testified that she received a policy, and that it was still at her home. She stated that she returned it, but that appellee brought it back to her and left it in her home. On cross-examination, she stated that she was not certain how long she kept the policy before she returned it, but she thought it was about thirty days when she mailed it to the main office of the company. She stated, however, that she did not return the policy until after her father had told her that he had been sued on the note, and that he then advised her to return the policy. The note was executed a few days before the policies were issued. The note bears the date July 20, 1925. The suit was instituted September 25, 1925. She did not return the policy until after the suit was instituted. She is mistaken as to the length of time she kept the policy. She did not return it within a reasonable time, and, when she did return it, she was following the instructions of her father then given. He should have directed the return of it promptly if he desired to void the payment of the first premium, and this he did not do.

Herbert Skaggs, on direct examination, did not say anything about having returned his policy, but on cross-examination he stated he returned the policy, and that

it was afterwards returned to him, but he did not know when he returned it. He does not show by his evidence that he returned the policy within a reasonable time. Lula Collier, another daughter of appellant, never made any attempt to return her policy. James Skaggs, Jr., another son, stated that he received a policy, and it laid around a while, and he took it over to the office of his attorney and left it. When asked whether he returned the policy, he answered, "Yes; I think so." He was then asked why he did not keep it, and his answer was, "I do not know." He had a faulty memory about why he took the policy to the office of his attorney, and he does not attempt to show that his policy was returned, or, if it was returned, at what time. From an examination of the evidence, it appears that neither Mary Conley, Herbert Skaggs, Lula Collier, nor James Skaggs, Jr., made any effort to return the policies to the company for some months after they were delivered.

Under these facts it appears to us that appellant cannot escape the payment of the first premiums. By his own acceptance of the policies (that is his acceptance through the four children, his agents) prevents his relying on the provisions of the original contract to defeat a recovery. George v. Ford, 183 Ky. 808, 211 S. W. 438. It cannot be doubted that one may be precluded from asserting a claim which would be meritorious except for his conduct. That is the practical effect of estoppel. Amburgey v. Adams, 196 Ky. 646, 245 S. W. 514. The appellant could not to the prejudice of appellee deny the validity of his promise to pay the first premiums on these policies, when he knew they had been issued and accepted by his children. Lockhart v. Kentland Coal & Coke Co., 182 Ky. 673, 207 S. W. 18. He had the right to stand on the original contract and refuse to pay the premium on any of the policies, but he could not see the contract performed in part and escape a pro rata liability. It is the general rule that a party may not keep silent when he ought to speak and allow other parties to be misled to their prejudice by his silence. McGuire v. Carroll Construction Co., 177 Ky. 675, 198 S. W. 6. If appellant did not mean to pay the first premiums on the policies which were issued, he should have promptly advised appellee to that effect. It is often the case that a man may be denied a right which he may have asserted because of his neglect to do something which he should have done at a proper time. Jett v. Jett, 171 Ky. 548, 188 S. W. 669.

It is true that a party cannot be estopped by something which he was induced to do through the fraudulent representations or concealment of the party invoking the estoppel. Carter v. Hall & Martin, 191 Ky. 75, 229 S. W. 132. But there was no fraud on the part of appellee which induced appellant to allow his children to accept and retain the four policies on which the judgment requires him to pay the first premiums.

What has been said applies with equal force to the conduct of the children who attempt to claim that some fraud was practiced on them which induced them to make application for the policies. The policies were issued and received by them and retained without objection for many weeks, and in fact until the appellant refused to pay the note and this litigation arose. The evidence shows that two of them returned the policies in the fall after they had been issued in the summer, while the other two appear not to have returned the policies at all.

There is some suggestion that the company in which the policies were issued was not authorized to transact business in Kentucky. Appellee stated that it was, and that is all of the evidence on that point. But that is not material as the question before us does not involve the necessity of our passing on that matter. All these questions are precluded by what has been said above. One other point is urged, and that it that at the time of the making of the contract appellee agreed that he would purchase an automobile from the appellant. He testified that appellee agreed to purchase an automobile from him, but thereafter refused to do so. If the automobile was worth what he was selling it for, he did not lose anything or if he did he does not attempt to show how it came about. Appellant was engaged in selling automobiles at the time. We do not think that question is material, or that it enters into a decision of this case. It was a collateral matter. Upon the whole case we have reached the conclusion that appellant should pay the premiums on the four policies, and, as that is what the judgment requires him to do, it should not be disturbed.

Judgment affirmed.