## Furst & Thomas v. Smith.

Nov. 24, 1939.

Jesse K. Lewis for appellants.
H. R. Wilhoit for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellants, Frank E. Furst, and Fred G. Thomas, are the members composing the partnership of Furst & Thomas, whose place of business is Freeport, Illinois, as wholesalers of certain merchandise. They sought by this action, filed in the Carter circuit court, to recover from appellee and defendant below, Elmer

Smith, a judgment for $277.66, balance due them from A. G. Smith—the son of defendant, Elmer Smith—and who is a retail merchant engaged in business at Matewan, West Virginia, while his father, the defendant, Elmer Smith, is a merchant at Williard, Carter County, Kentucky.

In January, 1932, the son, A. C. Smith, in contemplation of becoming a customer of plaintiffs, signed a written sales contract, or agreement with them under the terms of which he proposed to sell by retail their merchandise at his place of business on terms set out in that contract, or agreement, among which obligations was one that he would make payments from time to time as stipulated therein. It also contained provisions for terminating the agreement by either party notifying the other as therein provided. Plaintiffs' plan was to have its prospective customer executing such a contract to have it guaranteed by a third party, and it prepared its contract with that purpose in mind and furnished one of its prepared forms to the son as its contemplated customer. Therefore, immediately following the signature of the son to that contract there was an addition whereby the surety signing it obligated himself to plaintiffs, in consideration of their promises and agreements to the principal in the contract, that the latter would fully perform it and if not done by him, then the surety became responsible to plaintiffs. To that written guaranty or suretyship the contract, when delivered to plaintiffs by A. C. Smith, contained the signatures of the defendant, Elmer Smith, and one W. M. Copley. Plaintiffs accepted it as so executed and immediately wrote defendant, as guarantor under the contract, of its acceptance thereof, which letter said: "We are pleased to inform you that we have received and accepted the Sales Agreement of Mr. A. C. Smith dated January 12, 1932, which you have signed as sureties. We hope he will do a successful and satisfactory business. If at any time you desire a statement of his account we shall be glad to send it to you upon request."

It was a duplicate letter addressed to both guarantors and was registered and the receipt of it from the postmaster at defendant's postoffice bore his signature as well as that of one J. H. Smith, followed by the words "signature addressee's Agent." While not in issue, we conclude it was sufficient to at least raise the presumption that the contents in the letter came to the knowledge

of defendant, and especially so when his name appears signed to the receipt as well as that of J. H. Smith with no indication that it was delivered to either in the absence of the other, there being no testimony adduced with reference thereto. No answer to that letter was made by defendant or received by plaintiffs and they thereafter commenced to fulfill their obligations to the principal in the contract in accordance with its terms. The latter defaulted in payments, as agreed to be made, and plaintiffs cancelled the contract when there was a balance due them thereunder of the amount sought to be recovered in this action. They then notified defendant by letter of the unpaid balance, which letter was also registered and receipted for by defendant.

The only defense interposed by defendant was a plea of non est factum, to which plaintiff replied by setting up the fact of notifying defendant of its acceptance of the contract with his name thereto as guarantor, their reliance thereon and his failure to respond thereto, as constituting an estoppel to rely on the interposed defense of non est factum. Defendant demurred to that reply, which the court sustained, and plaintiffs failing to plead further their petition was dismissed, followed by their filing a complete transcript of the record in this court with a motion for an appeal.

It, therefore, will be seen that the only question involved is one of law, and which is: Did the letter of plaintiffs notifying defendant of their acceptance of the contract as so apparently guaranteed by defendant impose upon him the duty to take action by informing plaintiffs of the alleged forgery of his signature thereto so as to deprive them of their right to rely upon its genuineness and for failure to do so he became estopped to thereafter insist upon the forgery in any action against him on the guarantee?

The fundamental principle lying at the bottom of the question is, the creation of an estoppel by silence when it is the duty of the one estopped to speak. That there is in law such a principle by which an estoppel may be created is admitted. It is, however, sparingly applied, but when the facts are such that the one guilty of silence—and because of which the estoppel is urged—should in good conscience speak, then the estoppel becomes as effectual as if created in any other manner known to the law. That principle as so circumscribed

is of universal application and has the approval of this court in many cases, some of which are, Jett v. Jett, 171 Ky. 548, 188 S. W. 669; Baird v. Read, 217 Ky. 71, 288 S. W. 1014; Skaggs v. Ferguson, 224 Ky. 775, 7 S. W. (2d) 213; Jones v. Kentucky Glycerine Company, 226 Ky. 676, 11 S. W. (2d) 713, and Stein Brothers & Boyce v. State Bank, 255 Ky. 270, 73 S. W. (2d) 13.

In the Skaggs case our recognition of the rule was thus expressed [224 Ky. 775, 7 S. W. (2d) 216]: "It is the general rule that a party may not keep silent when he ought to speak and allow other parties to be misled to their prejudice by his silence."

In the Jones case [226 Ky. 676, 11 S. W. (2d) 716] we quoted and approved the text from 21 C. J. 1060, page 1113, Section 116, saying: "This estoppel [by silence when it is the duty to speak] arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." The other cited cases, as well as many others not cited, recognize and apply the character of estoppel under consideration when the facts called for its application.

But it is insisted that the crux of this case is simply the failure of defendant to answer a letter written to him by plaintiffs, and that there is no duty on the part of an addressee of a letter to answer it and, therefore, defendant's failure to answer plaintiffs' letter of notification of the acceptance of his name as guarantor of his son's contract with plaintiffs was not sufficient to estop him by his silence from thereafter urging the forgery of his name to the contract of guaranty in an action against him based upon it.

In support of that contention counsel cite the case of Furst et al. v. Grover H. Carrico, rendered by the Maryland Court of Appeals, and reported in 167 Md. 465, 175 A. 442, 444, 96 A. L. R. 375, in which that court held that there was no estoppel under almost identical facts, if not completely so, to those appearing in this case. But the reasoning of that court in arriving at that conclusion is by no means convincing. The opinion practically admitted that if the notification of acceptance of the guarantee contract had been orally made and person-

ally delivered to the guarantor it may have created a duty on his part to speak, since, as stated in the opinion, ''Men use the tongue much more readily than the pen.'' But the underlying principle is not governed by the manner of readiness with which men usually speak, but whether the circumstances are such as to require them to speak, whether it be the most ready manner or the one more seldom employed by them. The duty imposed, if any at all, is that of ''speaking'' and not the manner by which it may be done. Furthermore, the Maryland opinion cites as chief authority for the conclusion reached a number of opinions in which it was sought to bind the addressee of the involved letter to the truth of some hearsay statements employed therein by the writer thereof, on the ground that it was the duty of the addressee to deny them as so made to the writer by others, and which class of cases involves an entirely different principle of law than the one now in hand, but nevertheless the Maryland Court applied it to the facts of its case.

Furthermore, that opinion cites the cases of Strauss Brothers v. Denton, 140 Miss. 745, 106 So. 257, 45 A. L. R. 341; Heberling Co. v. Dalton, 18 La. App. 233, 138 So. 176, and the Canadian case of Dominion Bank v. Ewing, 7 Ont. L. R. 90, 35 Can. Supreme Court, 133, as holding directly contrary to its conclusions under the same or substantially the same facts, and it inserted from the Canadian opinion this statement: ''No doubt a man is not bound to answer every letter he receives, or to combat every charge or allegation which the writer may make against him. * * * But a business communication like that in question stands on quite a different footing, and according to the dictates of common sense and fair dealing does require an answer since it must be apparent to the receiver that the future conduct of the sender, in regard to the receiver's supposed obligation, may or will be different if it is a forgery from what it would be if it were the genuine instrument it was taken for.'' We conclude that the reasoning of that court is sound and unanswerable, and which, in effect, was the conclusion of the courts in the other two cases from Mississippi and Louisiana.

A consideration of the facts will so demonstrate, as we conclude. Here—as in the cases supra—plaintiffs demanded a guaranty of performance of their prospective customer according to his contract with them.

606

He delivered to them a contract which on its face was duly executed, containing the signature of defendant as guarantor. They, in fairness to the apparent guarantor, notified him of what had been done and that they had accepted the contract on the faith of what appeared to have been done. Any reasonable man would then, in fairness and good conscience, be called upon to dissipate such appearances upon which action was contemplated, and which he was bound to know was contemplated by the other party. To remain silent, therefore, and to allow such other party, in reliance upon the genuineness of the appearances, to change his position and to accept the contract as genuine, would be, according to our conclusion, a supreme violation of duty for which the silent non actor would become estopped to afterwards repudiate the appearances by denying his obligating signature. As said, the Mississippi, Louisiana and Canadian courts so held, and the only direct authority to the contrary from any Anglo-Saxon court that we have been able to find is the Maryland opinion, but with which we are unable to agree.

Having so concluded, it follows that the court erred in sustaining defendant's demurrer to plaintiff's reply, and for which reason the motion for the appeal is sustained, the appeal is granted, and the judgment is reversed, with directions to set it aside, and to overrule the demurrer to the reply, followed by other proceedings consistent with this opinion.