## Baird, et al. v. Read.

(Decided December 7, 1926.)

### Appeal from Monroe Circuit Court.

1. Mortgages—Where ʙoth Mortgages are Recorded, One Prior in Time Prevails.—ʙMortgage prior in time, if valid, must prevail where both mortgages are recorded.

2. Mortgages—Mortgage Reciting Indebtedness, but Not Stating its Amount, is Not Constructive Notice, though Recorded.—Mortgage reciting consideration for notes of indebtedness to secure payment of which notes property was conveyed, and not expressing amount of notes or of consideration, does not operate as constructive notice to a subsequent mortgagee, although it was recorded, since amount of debt must be stated with reasonable certainty.

3. Alteration of Instruments—Finding that Amount of Indebtedness Secured was Inserted in Mortgage After it was Recorded Held Sustained by Evidence.—Evidence held to sustain finding that amount of indebtedness secured by mortgage was inserted by interlineation long after mortgage was recorded.·

4. Mortgages—One Owning Mortgage, Who Represents to Prospective Purchaser of Another Mortgage that Latter is Only Valid Mortgage, is Estopped as Against Purchaser.—One owning mortgage, representing to prospective purchaser of another mortgage that such is the only valid subsisting mortgage, will not be permitted to claim rights under prior mortgage as against purchaser.

5. Estoppel—One Failing to Speak, when Bound to do so, will Not be Heard to Disadvantage of Innocent Person, Acting on Faith of Representations or Concealment.—One failing to speak, if it is his duty to speak, will not be heard to the disadvantage of an innocent person, investing money or assuming obligations on the faith of the representations or concealment.

6. Mortgages—Assignees of Past Due Mortgage are Estopped to Claim Priority, where Assignor was so Estopped.—Where mortgage owner is estopped to claim priority by failure to disclose his ownership of mortgage to purchaser of another mortgage, persons to whom he assigned his mortgage after it was past due takes subject to all defenses against him.

BASIL RICHARDSON, V. H. BAIRD, JOHN E. RICHARDSON and B. F. DENHAM for appellants.

F. R. & N. G. GOAD and MORRIS & JONES for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Two mortgages, one held by appellants and the other held by appellee, are asserted against a garage and lot in Fountain Run, Kentucky, a village in Monroe county, and we are called upon to determine which shall take precedence under the facts and circumstances which surrounded the parties and attended the execution and the assignment of each instrument. The Bank of Fountain Run failed while Ed Grooms was its president and Hugh L. Grooms was cashier. About the same time the First National Bank of Scottsville, Allen county, was experiencing financial difficulties and was in the hands of a liquidating agent. The mortgage under which appellants claim bears date the 15th day of July, 1921, and was executed by Hugh L. Grooms and wife, of Fountain Run, to Ed Grooms, father of Hugh L. Grooms, of the same town, and purports on its face to be for $10,550.00, for which sum it says that the first party has "granted, bargained and sold and by these presents do bargain, grant and sell to the second party, all of the following described real estate: a certain tract of land lying on the east side of Main street and being the same land bought from Howard Bros. & Grooms and B. W. Downing, now occupied as

a public garage." And two or three other parcels of real property are also described. The mortgage under which appellee claims bears date of January 14, 1923, and was executed by H. L. Grooms and wife to Ed Grooms, to protect Ed Grooms as surety upon a $2,000.00 note executed by H. L. Grooms with Ed Grooms as surety to the First National Bank of Scottsville, which mortgage is and was for the use, benefit and protection of the First National Bank on the note for $3,000.00, and the mortgage was attached to the note and held by the Bank of Scottsville. Clearly the mortgage under which appellants claim is prior in time to the mortgage under which appellee claims, and if valid must prevail, as both mortgages were recorded. Appellee, however, assails the validity of the mortgage under which appellants claim of date July 15, 1921, at least as to its priority over the mortgage held by him, because the mortgage under which appellants claim did not, at the time it was executed and recorded, recite that it was executed to secure notes amounting to $10,550.00, or any sum, and hence was not constructive notice to appellee, or sufficient to put appellee on notice as to what notes were intended to be embraced and protected by the mortgage, for which reason the so-called mortgage was not a recordable instrument. This contention is based upon what appellee insists was an alteration made in the face of the original mortgage after it had been executed and recorded, and an alteration made on the record book in the office of the clerk of the Monroe county court, where the mortgage had been recorded on July 10, 1922, almost a year after its execution. The instrument was prepared upon a blank form styled "*Mortgage.*" The blanks are filled in by typewriting. Omitting the date and names of the parties, the printed form reads:

> "Witnesseth: That the party of the first part for and in consideration of his indebtedness to the party of the second part, as follows:"
> Here follow five blank lines, on the first of which is written, immediately following the printed part above copied, these words and figures:

"Said party of the first part has executed his $10,550.00 notes to said second party, and to secure the payment of them or any part of them, has granted, bargained and sold, and by these

presents do grant, bargain and sell to the party of the second part, etc.''

Appellee insists that the figures ''$10,550.00,'' which are partly on the margin of the right-hand side of the blank form, were placed there after the mortgage had been executed and recorded, and this contention is based upon the appearance of the original instrument, which is now before us, and upon the interlineations appearing upon the record book in the office of the clerk of the county court of Monroe county. If these figures be left out of the mortgage, then it would read: ''Witnesseth: That the party of the first part, for and in consideration of his indebtedness to the party of the second part, as follows: Said party of the first part has executed his notes to said second party, and to secure the payment of them, or any part of them, has granted, bargained and sold, and by these presents do grant, bargain and sell to the party of the second part, . . . ,'' and does not express any amount or consideration for which the mortgage was given, and would come clearly within the rule announced by this court in the case of Cin. Leaf Tob. Warehouse v. Combs and Others, 109 Ky. 21, where it was, in substance, held that a mortgage reciting that it was executed to secure ''a certain sum of money'' advanced to the mortgagee under a contract entered into on a day named, and that a note was executed therefor, is so uncertain as to amount that it does not, though recorded, operate as constructive notice to purchasers or creditors, and was invalid. In that opinion we quoted from Pearce v. Hall, 12 Bush 209, this sentence: ''The spirit of our statutes upon this subject requires not only that such conveyances shall be lodged for record but that they shall show for themselves, and without the aid of extrinsic evidence to be obtained by inquiry, the nature of the lien, and with a reasonable degree of certainty the amount of the debts they are intended to secure. If the amount be ascertained, as in this case, it ought to be stated. . . . Unless this much is done, the public record does not show the state of the title, and room is left for the substitution of fictitious and fraudulent claims, and the prime object of the recording system is subject to be defeated.''

The learned circuit judge who decided the case below and in whom we have great confidence expressed the

opinion, from an examination of the original document and the testimony of witnesses, that the figures "$10,550.00" were interlined in the original paper with a typewriter after that paper had been executed and recorded, and gave expression to this view in an opinion delivered at the time the judgment was entered. On examination of the original document with the aid of a magnifying glass we are able to discern that the figures "$10,550.00" were not written at the same time and with the same typewriter ribbon as the balance of the instrument, and are somewhat out of line with the other type-written words immediately preceding it. That these figures were and are interlined can not be doubted from an examination of the original paper. However, it can not be said from an examination of the original paper that this interlineation was made after the delivery of the instrument. On this point there is other evidence to show that some time after the instrument was recorded in the office of the clerk of the county court it was examined by two witnesses who say that the figures "$10,550.00" were not then on the record although the balance of the instrument was properly of record. The county clerk says that the figures "$10,550.00" were interlined on the record, and this is manifest, because the record in the office of the clerk was made with a book machine, while the interlineation was made with pen and ink. But the clerk does not know just when the interlineation was made, but thinks it may have occurred when the record was compared with the original only a short time after the mortgage was recorded. This, however, is made very doubtful by the evidence of the witnesses who examined the record before the interlineation had been made. From this testimony it would appear that the interlineation was made long after the mortgage was recorded.

These mortgages were held by Ed Grooms and were assigned by him, one to the First National Bank of Scottsville, and the other to appellants, Baird, et al. When the Scottsville bank was experiencing financial difficulties, appellee, Read, who was a director, and other members of the board of directors, were required by the national bank examiner to assume a large amount of paper held by the bank in order to make the bank safe for the depositors. Under this order appellee, Read, assumed $5,000.00 of such paper. He wanted to procure

such of the paper condemned by the bank examiner as
would eventually be paid, and in his efforts to do this he
went to Fountain Run with the bank examiner to see Ed
Grooms about the $3,000.00 note executed by H. L.
Grooms to the National Bank of Scottsville and which
was secured by mortgage on the garage at Fountain Run.
He found Ed Grooms at Fountain Run and told him of
his purpose to buy the note and inquired whether there
was any other mortgage or lien upon the garage property
at that time and was told by Ed Grooms that the mort-
gage held by the National Bank of Scottsville was the only
mortgage on the garage property at that time, and
that it was good.   That was about September 1st.
Immediately thereafter appellee, Read, relying upon
the statements of Ed Grooms, purchased from the
First National Bank, through its liquidating agent,
the $3,000.00 note and mortgage, at the time put-
ting up to the bank liberty bonds of a greater value than
$5,000.00 for payment.   At that time Ed Grooms was the
owner of the mortgage now held by appellants, for that
assignment was not made until late in October following.
Under these facts appellee insists that Ed Grooms. and
later his assignees, the appellants, were estopped to
assert a prior or superior lien or claim on the garage
property in Fountain Run.   This position seems entirely
logical and sustaintable by authority as between Ed
Grooms and appellee, Read, because one who owns such
a mortgage or lien and represents to a prospective pur-
chaser that another mortgage or lien proposed to be pur-
chased against the same poperty is the only valid and
subsisting mortgage against such property, and fails to
tell a prospective purchaser the true facts and disclose to
him the existence of the other mortgage, will not be per-
mitted to claim his rights under the prior mortgage for
it is a rule that he who fails to speak, when it is his
duty to speak, will not be heard to speak when it will be to
the disadvantage of an innocent person who invested
money or assumed obligations on the faith of the repre-
sentations or concealment of the one who would take ad-
vantage of his own wrong.   It also seems logical to say
that as Ed Grooms was bound by his conduct in failing to
disclose the fact that he held another mortgage upon the
same property, if he did hold another mortgage upon the
same property, to Read, a prospective purchaser, and the
paper was then past due, his assignee took the paper with

all its infirmities and subject to all the defenses which would have been available as against Ed Grooms, and the assignees of Grooms are in no better position than was Ed Grooms with respect to the note and mortgage purchased by appellee, Read. All of the elements of estoppel are present, and as appellants are not innocent purchasers for value before due they can not now assert that Ed Grooms should not now be permitted to assert that the mortgage of July 15, 1921, is prior and superior to the mortgage made to the First National Bank of Scottsville at a subsequent date. For these reasons we concur in the finding of the learned chancellor, who held that the garage property in Fountain Run is first subject to the mortgage lien of appellee, Read, for which reason the judgment must be and is affirmed.

Judgment affirmed.